Wiggins v. Tallmadge.

[ESSEX GENERAL TERM, July 7, 1851. *Willard, Hand and Cady*, Justices.]

————————•◦•————————

WIGGINS and others, commissioners of highways of the town of Malta, *vs.* TALLMADGE.

If a highway is laid out in the mode pointed out by statute, that may be done at once. But if user is relied upon to prove a dedication to the public, the authorities differ as to the time requisite. Yet there is no doubt user is sufficient. *Per* HAND, J.

A dedication to the public must be with intent to dedicate. But when that intention is ascertained, whether by the express declarations and acts of a party, or by user, it is sufficient.

Forty years before suit, the grantor of the defendant, and his neighbor, opened a lane or road upon their boundary lines, to accommodate the adjoining lands, taking ten feet from each side. The road thus opened was used uninterruptedly by the public, thenceforth, until shut up by the defendant, the year before the trial. In 1848 the commissioners of highways ascertained, described and entered such road upon record. In 1826 they surveyed, laid out and recorded, and made to connect with the road or lane in question, the road beyond, on which inhabitants resided who had no other egress. *Held* that there was sufficient evidence of a *dedication* to the public, upon which the public and individuals had relied; and of an adoption of such road by the proper authorities. And the defendant having purchased a farm adjoining the road, many years after the dedication, and having acquiesced in the use of the road by the public for 22 years, and then obstructed the same, by building a fence through the center thereof; *Held further*, that he was liable for such obstruction, in an action at the suit of the commissioners of highways. CADY, J. dissented.

THIS suit was originally commenced before a justice of the peace, and dismissed by him on a plea of title, &c. The action was commenced in this court, May 25th, 1849, and tried before Mr. Justice Cady, at the Saratoga circuit in February, 1850, when a verdict was given for the defendant. The complaint alledged that the plaintiffs were commissioners of highways of

Malta, in the county of Saratoga, and that a road near to, or adjoining the land of the defendant, had been a highway for more than thirty years, and that the defendant obstructed it by building a fence through the center, which was removed by their order, and the defendant again obstructed it by building fences across and fencing up 80 or 100 rods of it. Whereupon this suit was brought to recover the penalties and damages imposed by statute. The answer denied that there was any such public highway; or that it was or had been for more than 20 years last past, or was ever a highway; but on the contrary, alledged that it was a private lane and used for private purposes alone; and that neither the public nor the commissioners had any right or legal claim, or jurisdiction or authority over the same; and denied that the defendant had injured or obstructed any public highway in the town of Malta, as stated in the complaint. One Waterbury testified that he had known the road about thirty-six years; that the part that had been obstructed had been used by the public ever since he knew it. That the north part of the road, being about one mile in length, had not been opened for some 13 or 14 years. There had been some obstruction, as bars or a gate. There was testimony to show that there had been some occasional travel on the whole length of a road or lane, about a mile and a half long, extending north and south between two other roads. About a mile of the northern part of this road had been cultivated many years, perhaps 13 or 14 years, and at most but a small part of that portion had ever been fenced as a road. There was a gate at the south end of this part. But the southern portion, which was the part in question, had been fenced out as a road or lane. A second witness stated that he had known this road or lane thirty-six years, a third between 30 and 40, and a fourth between 40 and 50, and another 40, and all of them testified to its use by the public during the time, except one, who stated that he and seven others, whom he named, had used it. The testimony further tended to show that formerly there was a factory off westerly, from which a lane or road, two rods wide, commenced, and ran easterly about 30 rods to a place where three families resided.

Wiggins v. Tallmadge.

Thence it continued about 60 rods, 1½ rods wide, where it intersected with the north end of the lane or road particularly in question in this suit. From thence the latter ran south about half a mile to an east and west road, and was about 20 feet wide. There was no house upon the disputed piece, but the families living on the above roads, westerly, had no outlet but this. One Parks owned the land on the west side, and the defendant on the east side of this road. One Olmstead formerly owned the farm now owned by the defendant, and sold it to the defendant in 1826. One Parks, called by the defendant, testified that he remembered when the road was laid out between his father, who owned on the west side, and Olmstead, who owned on the east. That the witness acted for his father in laying out the road. That was 40 years before the trial, and there was at that time only one family in north. That Parks and Olmstead laid open the road so that Olmstead would not go through his father's land, and so that it could be used as a lane to accommodate the fields east and west. That it was a mere verbal agreement between two neighbors. That he had been pathmaster a number of years, and this road was not attached to any beat, to his knowledge. That every body passed through it that had occasion, but he did not know as the public, by their officers, recognized it as a road until 1848. That he had known the public to use it as a highway for about 40 years; that it had never been closed up until the defendant closed it up in the spring of 1849. That the soil was sandy and did not need repairs like hard land. That the fence on the east side of the road was where it had been for 40 years. A brother of this witness, called by the plaintiffs, testified that he understood his father and the other owner gave each ten feet. There was a road through before, further west, but it was opened where it is now when the 20 feet was given. He had used it 40 or 50 years, and it had always been used by the public. That he did not know when it was opened, but thought it had been opened 60 years. That he had worked it for his own accommodation, and there was a bridge on it. That he had used it to draw lumber to Stillwater 50 years before.

Wiggins *v.* Tallmadge.

The plaintiffs proved by the records of the town of Malta, that this road was ascertained, described and entered of record in the town clerk's office by the commissioners of highways of Malta, in April, 1848.

The defendant gave in evidence, under objection, the following, which was recorded in the town clerk's office, March 4, 1829. "A survey of a road laid out by the commissioners of highways, on the 9th day of October, 1826, beginning sixty-five links northward of the north limit of Lewis Waterbury's house, and on the line with the west end thereof, and running thence S. 66 deg. E. 13 chains and 46 links to the middle of the lane running N. and S. between Coleman Olmstead's lane and Patrick Parks, land, the point of intersection being N. 63 deg. E. 33 links from the middle of a pitch pine tree in the N. E. corner of Patrick Parks' field. Thence N. 22 deg. 45 E. 3 chains 73 links to a point in the said line of David Bidwell's land, 43 links N. E. of an apple tree in Coleman Olmstead's field and 47 links S. W. of a certain pitch pine stump, the lines above traced being intended for the middle of the road, and the road 37½ links wide.

JOSEPH ·SIMPSON,
ZADOCK DUNNING,
Com'rs of Highways.

Signed the day and date
within, in presence of
Sam'l Hunter, Surveyor.

The judge charged the jury, among other things, that the highway must have been adopted by the officers of the town, in order to make it a public highway, as contemplated by statute; and the plaintiffs were bound to show that it was so far a public highway, that the public had adopted it, which they had not done. That merely traveling on the road did not give them a right to it at all. Individuals merely traveling a road, or using it as a right of way, did not make it a public highway, within the meaning of 1 *R. S.* 521, § 100. It was necessary that the officer representing the public should secure it, or do some act to signify their adoption of it, and in this case there was no proof of such acts prior to 1848. That the act of the plaintiffs in 1848 only showed one year's possession, and therefore could have no effect in this cause. The plaintiffs excepted, and the jury found

for the defendant. A bill of exceptions was sealed and the plaintiffs appealed.

*J. B. McKean*, for the plaintiffs.

*E. F. Bullard*, for the defendant.

HAND, J. The revised statutes declare that " all public highways now in use, heretofore laid out and allowed by any law of this state, of which a record shall have been made in the office of the clerk of the county or town, and all roads not recorded, which have been, or shall have been used as public highways for twenty years or more, shall be deemed public highways, but may be altered in conformity to the provisions of this title." (1 *R. S.* 521, § 100.) The next section requires the commissioners of highways to order the overseers of highways to open all roads to the width of at least two rods, " which they shall judge to have been used as highways for twenty years." (§ 101.) Another section requires the commissioners " to cause such of the roads used as highways as shall have been laid out but not sufficiently described, and such as shall have been used for twenty years, but not recorded, to be ascertained, described and entered of record in the town clerk's office." (1. *R. S.* 501, § 1, *sub.* 3.) And by section 102 a penalty of five dollars is imposed upon " whoever shall obstruct any highway," &c. It perhaps is not important to define what was deemed a highway at common law, as the statute declares that all roads used as public highways for twenty years, may be deemed highways. It seems to me this clause of the statute has great influence upon this case, though I do not think it necessary to put the case upon twenty years' user. " Highway" is the genus of all public ways, whether cart, horse or foot ways. ( *Queen* v. *Saintliff*, 6 *Mod.* 255. *Holt*, *C. J.* 4 *Vin.* 502.) And whether a road shall be deemed a highway from mere user, depends upon the nature of the user. It is doubted in some of the books whether a road can be a highway unless it be a thoroughfare. (*Hoodyer* v. *Hadden*, 5 *Taunt.* 126. *Hood* v. *Veal*, 5 *B. & Ald.* 454. *King* v. *Marquis of*

*Downshire*, 4 *Ad & El.* 698.) The judges have been divided in opinion, but there is now, perhaps, a leaning to the opinion that it may be. (*British Museum* v. *Finnis*, 5 *C. & P.* 460. *Roscoe on Cri Evi.* 564. *Woolr. on Ways*, 3.) "A thoroughfare," Mr. Webster says, "is a passage through; a passage from one street or opening to another;" and a highway has been said to be infinite, having no *termini*; no *terminus a quo*, nor *terminus ad quem.* (*King* v. *Hammond*, 10 *Mod.* 383.) But a *cul de sac* may be a good highway, in this state, if laid out by the proper authorities. In our new country are many public roads not connected with any other, at one end. And the same judge who gave the opinion in *King* v. *Hammond*, decided that if a vill be erected and a way laid out to it, if there be no other way but that to the vill, it is not material *quo animo* it was laid; it shall be deemed a public way. (*Parker C. J. in Queen* v. *Inh. of Hornsby* 10 *Mod.* 150.) If a highway is laid out in the mode pointed out by statute, that may be done at once. But if user is relied upon to prove dedication, the authorities differ as to the requisite time; but there is no doubt user is sufficient. In some cases six, and in another seven years, were required. In *Colden* v. *Thurbur*, twelve years' use was held *prima facie* evidence that the road had been properly laid out. (2 *John.* 424.) Lord Kenyon, in *Rugby Charity* v. *Merriweather*, mentioned a case of six years. (11 *East*, 375, *n.*) That case has been doubted; and perhaps more now depends upon the intent than upon the time of sufferance. (*Woolr. on Ways*, 12.) A dedication must be with intent to dedicate. (*Ld. Denman* in *Barraclough* v. *Johnson*, 8 *Ad. & El.* 99.) There must be *animus dedicandi*, and when that is ascertained, whether by the express declarations and the acts of a party, or by user, it is sufficient. The books are full of such cases. (*Ladi* v. *Shepherd*, 2 *Stra.* 1004. *Post* v. *Pearsal*, 22 *Wend.* 425. *S. C.* 20 *Id.* 116. 3 *Kent*, 451. *Jarvis* v. *Dean*, 3 *Bing.* 447. *Surrey Canal* v. *Hall*, 1 *M. & Gr.* 392. *Parker* v. *Van Houten*, 7 *Wend.* 145. *Galatian* v. *Gardner*, 7 *John.* 106. *City of Cincinnati* v. *Lessee of White*, 6 *Peters*, 435. *N. Orleans* v. *U. S.* 10 *Peters*, 662. *State* v. *Wilkin-*

Wiggins *v.* Tallmadge.

*son*, 2 *Vt. R.* 480. 4 *Paige*, 510. *Hunter* v. *Trustees of Sandy Hill*, 6 *Hill*, 407. 2 *Smith's Lead. Cas.* 180, *and Am. Notes*.)

Again; the commissioners are to ascertain and enlarge those roads which have been used twenty years. (1 *R. S.* 501, § 1; 521, § 101.) Perhaps the roads can not be enlarged, without compensation. But the commissioners can ascertain what are roads in the town, and when that is done, the road so ascertained becomes a public highway so far as such public act can confirm it; in cases where confirmation is necessary. (*Parker* v. *Van Houten*, 7 *Wend.* 145.) Though I do not see how such confirmation can be necessary in this case. As a general rule the parish is to repair all highways, no matter how they became such. (*King* v. *Inh. of Leake*, 5 *B. & Ald.* 469. *Woolr. on Ways*, 76. *King* v. *Inh. of Wornsey, Holt*, 338. 4 *Vin.* 504, 5.) And a bridge used by the public, *prima facie*, is to be repaired by them, it seems, though built by an individual; and to escape that obligation, it lies with the public to show that the duty rests with another. (23 *Wend.* 450.)

These principles, applied to the road in question, require a new trial. Here was a former road opened perhaps sixty years ago; and forty years before suit the grantor of the defendant, and his neighbor, nearly upon the same site, opened a lane or road upon their boundary lines, taking ten feet from each for the distance of half a mile, from whence it continued on another course into a small neighborhood; and which ever since has been used uninterruptedly by the public, until shut up by the defendant the year before the trial. It is true the factory has been abandoned for years, and but few families have resided beyond the part in question. And it has been decided there can not be a dedication to a limited part of the public. (*Pool* v. *Huskisson*, 11 *M. & W.* 827.) And it is testified that the twenty feet was opened to accommodate the adjoining lands. But the uninterrupted use by the public alone, I think sufficient evidence of dedication.

But again; in 1826, as I understand the testimony, the road commissioners surveyed, laid out and recorded, and made to connect with the road or lane in question, the road beyond, on

which inhabitants then resided, who had no other egress. And the public were undisturbed in the use for twenty-two years after. Denominating the road in question the "lane" of A. in that survey could make no difference. If it was a public road before, an admission to the contrary, by a public officer, in a document upon another subject, would not affect the rights of the public. But I think it is rather a declaration that the other part was also a public way, for it would be futile to lay out a road sixty or seventy rods in length, having no connection with any other road. And this takes away the objection that the particular piece in question was a *cul de sac*, if that would make any difference. Possibly from the last course of the survey made in 1826, some other outlet was intended; but if so, it seems no such route has been completed. Nor, under the circumstances, could that alter the case. But there is another circumstance that should not be overlooked. In 1848, the proper officers ascertained, described and entered this road upon record. If any adoption was necessary this was sufficient, and made the public liable to repair. Upon the whole, here was sufficient evidence of a dedication, upon which the public and individuals had relied; in addition to which, the proper authorities had taken legal steps to declare it a public highway. The defendant purchased the adjoining farm many years after the dedication and subsequently acquiesced in the use by the public 22 years longer, and then obstructed the road and shut in his neighbors.

I think the case is clearly against him; at all events the question of dedication should have been passed upon by the jury.

Judgment reversed, with costs to abide the event.

WILLARD, P. J. concurred.

CADY, J. (dissenting.) There can be no dispute as to the origin of the road or lane in question. About 40 years before the trial of this cause, Jehiel Parks and a Mr. Olmstead each owned a farm, bounded by each other, by a line running north and south; and they agreed that they would each give a piece of land ten feet wide for the purpose of making a road or lane twenty feet wide

Wiggins *v.* Tallmadge.

between their farms. This would enable each of them to pass cenveniently into their respective fields, and a fence was built on each side of the lane so agreed on. This was a lane in the proper meaning of that word—it was " a narrow way or passage as distinguished from a public road or highway."

In its origin this was a private road or lane ; it was the private property of two individuals, to the rights of one of whom the defendant has succeeded. Although the owners of this lane suffered any person who pleased to pass and repass over it on foot, on horseback or in carriages, it did not thereby become a public highway ; nor did the owners of it lose the right to control it.

The owners of the land over which this lane passed agreed that it should be twenty feet wide, and it was so fenced and used for about thirty-eight years, before the overseers or the commissioners of highways, who alone had a right to act on behalf of the town, set up any claim to it. It was not at any time during that period included in any road district, or worked as a public highway ; and what right had the commissioners of highways of the town of Malta in the year 1848 to come to the owners of this lane, and say to them, gentlemen, in 1810 you or those under whom you claim established this lane twenty feet wide ; you have suffered every person who pleased to pass over it for the last 38 years ; now we claim it as a public highway, and order it to be made two rods wide, and each of you to move your fence back upon your land six feet ? Because you 38 years ago agreed to give and did give ten feet from each of your farms, to make a lane between them, we have a right to take the lane, and six feet more from each of your farms, and convert the whole into a public highway. If the commissioners of highways can do this, what becomes of that clause of the constitution of 1846 which is as follows, " nor shall private property be taken for public use without just compensation" ? It can not be denied that the piece of land six feet wide on each side of this lane was in March, 1848, private property : it had been enclosed more than forty years, and it could not in April in that year be taken for public use without just compensation ; and unless it could be taken without compensation the commissioners of highways could not

convert it, or the lane, into a highway; for all public highways must be at least two rods wide.

By 1 R. S. 2d ed. 59, § 1, it is made the duty of commissioners of highways to cause such roads as have been used as public highways for twenty years but not recorded, to be ascertained, described and entered of record in the town clerk's office; and by section 105, page 517, it is made their duty to order the overseers of highways to open all roads to the width of two rods at least, which they shall judge to have been used as public highways for twenty years.

When the commissioners adjudge that a road has been used as a public highway, and ascertain, describe and enter it of record, they are not bound to give any notice thereof to the owners of the adjoining land; and the right of appeal is not given to any person who may deem himself aggrieved by the act of the commissioners in adjudging that a road has been used twenty years as a public highway, and ascertaining, describing and causing it to be recorded. The right of appeal is only given when a person "considers himself aggrieved by any determination of the commissioners of highways, either in laying out, altering or discontinuing, or refusing to lay out, alter or discontinue any road." In this case there was a lane or private road twenty feet wide, and a fence on each side of it; and the commissioners of highways assume the right to adjudge that it had been used as a public highway for twenty years, and ascertain, describe and have it recorded as a public highway two rods wide. Unless this can be deemed a laying out or altering a highway, no right of appeal is given; and if it be a laying out or altering a highway, then the commissioners had no jurisdiction to interfere with the fences and the land on each side of the lane, without the consent of the owner, unless certified to be necessary by the oath of twelve respectable freeholders. The defendant in this case has no remedy, unless he had liberty upon the trial of this cause to deny that the road in question was a public highway. That, therefore, became a material question in the cause.

And what evidence was there that it had for more than twenty years before the year 1848 been used as a public highway? It

Wiggins *v.* Tallmadge.

was proved that every person who pleased traveled over it; and that was all the evidence to show that it was a public highway. Was that enough? Suppose there be two public highways, parallel with each other and a mile apart. A man owns a farm between these two public highways and one-fourth of a mile from either of them, and it is necessary for him to have a road through his own farm to each of those public highways, but he is compelled to obtain such private roads by a regular course of law; and he then fences the road on both sides; and on each side of his own fence he is obliged to build and keep up an expensive bridge; and after the road is made passable and the two bridges erected, he leaves it open and allows every person who pleases to pass over it. He does not even forbid the persons from whom he was obliged to purchase the road to pass over it; and he suffers it to be thus traveled for twenty years. Will it thereby become a public highway, and the commissioners of highways be bound to keep the road and bridges in repair at the expense of the town, or the town be liable to pay all damages which any person may sustain on account of the road or bridges being out of repair? If not, then a road is not made a public highway by reason that every person who pleases travels over it. But if in the case I have put, the road does become a public highway, then the town may be made liable to pay damages or incur heavy expenses to keep the roads and bridges in repair, which the commissioners of highways have never recognized as public highways, which have never been annexed to any road district, or worked at the public expense.

But this is not the only consequence which will follow from holding that travel on a private road for twenty years will convert it into a public highway. In the case I have supposed, a piece of land twenty feet wide has been by process of law laid out as a private road through a man's farm. The man who procured the road to be laid out, suffers all persons to travel over it for twenty years; and if at the end of twenty years it becomes a public highway, the commissioners of highways will be bound to cause it to be opened two rods wide, and the farmer from whom a piece twenty feet wide was taken for a private road,

will be compelled to surrender another piece twelve feet wide through his farm without compensation, and remove or make new fences, and the man who purchased the private road and always had a right to put bars, or a gate, or a fence across it, may be compelled to surrender his private road without any compensation.  A rule which may be followed by such injurious consequences, ought not to be adopted ; but if all persons travel over a private road for twenty years, that will not convert it into a public highway.  What does the statute mean, which makes it the duty of the commissioners of highways to cause all roads which have been used as highways for twenty years, to be ascertained, described and entered of record in the town clerk's office, and to order the overseers of highways, to open all roads to the width of two rods at least, which they shall judge to have been used as public highways for twenty years ?  Does every road frequently traveled over for twenty years become a public highway, or does the statute mean that when a road has been recognized as a public highway by the proper officers of a town, by being annexed to a road district, and worked and kept in repair at the expense of the town for twenty years, the town acquires a right to the road ?  In such cases the commissioners of highways of the present day may generally have record evidence that a road has been used as a public highway for the last twenty years. They can, by searching the records of the town clerk's office, discover whether it has been attached to any road district and put under the care of an overseer of highways : if it has not, there is no reason to believe that the officers of the town whose business it is to attend to the highways have regarded or claimed it as a highway.

Twenty years' use of a road as a highway is, upon the principle of the statute of limitations, evidence of a title to the easement ; either by grant or an original laying out of the road, although no record can be found.  An adverse possession of an easement for twenty years furnishes evidence of a right to it. By an act passed by the legislature in the year 1784, no public highway was to be less than two rods wide ; and hence it is, if a road has been used twenty years as a public highway, the pre-

Wiggins *v.* Tallmadge.

sumption is that it is at least two rods wide. And as the twenty years use established the right, the legislature has made it the duty of the commissioners of highways to cause all such roads to be opened two rods wide. The commissioners and overseers of highways are the officers of the town, by whose acts the town is bound. If they have claimed and used a road as a public highway for twenty years, not only the right but the duty of the town is established. The title of the town to the road can not be acquired, and the duty of the town to keep the road and bridges in repair can not be imposed, by the acts of individuals in traveling over the road. The officers of the town have no right to interfere with the travel on a private road.

When a road has been regularly laid out and opened as a public highway, it ceases to be a public highway, unless worked within six years. A highway must not only be opened but worked at the public expense, or the town loses all its title thereto. This shows that work upon the road at the public expense, is material evidence in showing that the road is a public highway.

The counsel for the plaintiffs, upon the argument, insisted that there was a dedication by the owners of the land, of the site of this road, to the public. But there is no evidence of a dedication to the public. There is, however, direct and uncontradicted evidence that it was set apart by the owners of the land for their own accommodation as a private way.

Again, if the town claims on the ground of dedication, it must accept the thing as dedicated. (3 *Kent's Com.* 451.) If a person dedicates a piece of his farm ten feet wide, the party to be benefited by the dedication, has no right to say to the party making the dedication, " you dedicated a piece of land ten feet wide, but as that will not answer my purpose I will take a piece thirty-two feet wide."

The road in question had no mark about it of a public highway ; it was only from eighteen to twenty feet wide, and every person who traveled on it is presumed to know that the law required every public highway to be at least two rods wide, and seeing this but eighteen or twenty feet he must know it was not

a public highway, unless the officers of the town having charge of the highways had been grossly ignorant.

The road of which that in question is a part, extended from the Stillwater road north to the Dunning-street road, but the north part of the road has been cultivated for the last fourteen years, and has not been an open road during that time. The part shut up is about one mile, and that which has been left open about half a mile long. The fact that two-thirds of the road as used twenty years ago has been shut up, and gates and bars placed across it, furnishes strong evidence that it was not used as a public road. The town officers set up no claim to it.

Again, if a traveler enters upon this road at its junction with the Stillwater road, he can travel north on it for half a mile, and come to a gate and to an open road to what is called the Factory, and there are three dwelling houses, and then the traveler comes to the end of the road, and what must he then do? He must go back the way he came to the Stillwater road; or if he wishes to go to the Dunning road he must open one or two or more gates or bars. In these circumstances there is no evidence that this road is a public highway.

" A road leading to any market town, and common for all travelers, *and* communicating with any great road, is a highway; but if it lead only to a church, or to a barn or village or to fields, it is a private way." (1 *Russ. on Crimes,* 308, *note g.*) This road in dispute was intended by Mr. Parks and Mr. Olmstead, to enable them to go to their fields, and that is the purpose for which their representatives now use it. It but leads to a factory and three families, and there it ends.

It does not therefore answer the common law definition of a highway. The motion for a new trial ought to be denied.

Judgment reversed.

[ESSEX GENERAL TERM, July 7, 1851. *Willard, Hand* and *Cady,* Justices.]