S. FLEET SPEIR et al., as Executors, etc., Respondents, *v.* THE TOWN OF NEW UTRECHT, Appellant.

*It seems* the words "used as public highways," in the provision of the Revised Statues (1 R. S. 521, § 100), declaring that "all roads not recorded which have been or shall have been used as public highways for twenty years or more shall be deemed public highways" do not require the user to be adverse and under such circumstances as would be required to give an individual a right of way by prescription.

*It seems*, also, although the owner of land may not dedicate it for a public highway or intend or assent that it shall become such, yet if he permits it to be used as such within the meaning of said provision for twenty years, it will become a public highway and he will not be permitted thereafter to question the public right.

The user, however, must be like that of highways generally; the road must not only be traveled upon, but kept in repair or taken in charge of, or adopted by the public authorities; and so, the fact that a portion of the public have traveled over it more than twenty years does not alone make it a highway.

In 1810, one C opened a lane twenty feet wide on his farm in the town of New Utrecht, Kings county, which terminated at each end in a public highway, and with a gate at each end. This lane led to the residences of three other persons, including S., plaintiffs' testator. In 1852, C. and S. agreed to substitute for the lane, a roadway sixty feet wide connecting at each end with the highway, and to carry out this purpose S. bought land of C. which was bounded on the new road. In 1853, the fences were removed, the new roadway opened and thereafter used

by the public generally. C. and S. at the time of the opening and repeatedly afterwards, declared that the road was a private way belonging to them and the other owners of the land lying upon it, and that they had a right to close it whenever they saw fit. After the opening of the road, lands were conveyed by C. and other grantors bounded upon it. In 1862, a steam railroad was with the consent of the adjoining land owners constructed and operated upon the centre of said road, the space upon either side of the tracks being used by the public to drive and walk upon. In 1886, plaintiff and other owners of land along said road conveyed to the railroad company other land for the purpose of having it remove its tracks from said road, which was done. In pursuance of various statutes (Chap. 670, Laws of 1869 ; chap. 554, Laws of 1881), an avenue was subsequently laid out, eighty feet wide, including said road, and commissioners were appointed for opening, who in making awards for damages, only awarded for lands outside of said road. After the confirmation and filing of their report the avenue was graded and constructed, and the lands adjoining the sixty-foot road were assessed for benefits; some of the owners paid their assessments. In 1874, the heirs of C. conveyed to plaintiffs' testator all their title and interest in the land of the sixty-foot road immediately in front of his adjoining land, which land was assessed for said improvement. In an action among other things to vacate said assessment, there was evidence that the said road had been dedicated by the owners for a public highway, but it did not appear that the public authorities ever accepted the dedication, or in any way adopted the road as a highway by working it, or forming it into or annexing it to a road district. *Held*, that the facts justified a finding that said road was not a highway either by dedication or user ; that the order of the Supreme Court confirming the report of the commissioners appointed to open the avenue was not an adjudication binding upon these parties and so not a bar to the action, as only the land taken, not the sixty-foot road, was involved in the procedure ; that said road could not be taken and condemned for a public highway without compensation to the owners of the fee.

Also, *held*, that plaintiffs were not estopped from assailing the assessment, by mere delay in commencing the action and by the fact that during such delay some of the assessments had been voluntarily paid.

*It seems*, that the existence of the railroad upon said sixty-foot road during a portion of the prescribed twenty years would not have defeated the claim of a highway by user.

Reported below, 49 Hun, 294.

(Argued May 5, 1890; decided June 3, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made June 25, 1888, which reversed a judgment in

favor of defendant, entered upon a decision of the court on trial at Special Term and directed judgment for the plaintiff.

This action was brought by the plaintiffs' testator, and in his complaint he prayed, besides other relief, that the assessments laid upon his land in the town of New Utrecht for opening, grading and improving Cropsey avenue be declared void, and that the defendant be perpetually enjoined from collecting the same. The action was put at issue and afterward brought to trial at a Special Term of the Supreme Court. Witnesses do not appear to have been produced at the trial, but the evidence there taken was in the form of statements mutually made and mutually assented to by the parties. The material facts found by the trial judge from the evidence so taken are as follows: In 1810 there was an ancient public highway, known as the "Old Mill road," running through the towns of New Utrecht and Gravesend. About the year 1810, James Cropsey built a house upon his farm, 500 feet from that road, and opened a lane twenty feet wide terminating at each end in the road, with a gate at each end, and leading irregularly to the residences of three different persons situated along the lane, one of which belonged to Robert Speir. In 1852 Cropsey proposed to Speir to dispense with the lane and to substitute a straighter roadway, sixty feet wide, connecting at each end with the Old Mill road, and Speir assented to the proposition, and for the purpose of carrying it out bought some land from Cropsey bounded upon the new road. In the early part of the year 1853, the fences were moved and the new sixty-foot roadway was opened, and thereafter was used by the public generally. Cropsey and Speir, however, repeatedly declared at the time of the opening and during subsequent years that the road was a private way belonging to them or to other owners of the land lying upon it, and that they had a right to close it whenever they saw fit. After the opening of that road, in the years 1853, 1866, 1868 and 1875, James Cropsey, as well as other grantors, by several deeds conveyed lands bounded by the side of the road. James Cropsey conveyed to the plaintiffs' testator by several deeds the title to

the land adjoining the road upon which the assessments mentioned in the complaint were levied, which lands are in the deeds bounded by lines, in terms "running along the line of said road." In the latter part of the year 1862, a steam railroad was constructed and operated upon the centre of the road with a single track until 1880, and afterward with a double track. The railroad was constructed under the general railroad act and was authorized by law to be constructed and operated on the road, and the owners of the land along the road consented to the construction of the railroad thereon. The width of the road-bed of the single track was about ten feet, and of the double track about twenty-two feet, and the entire superstructure of the railroad was not higher than the surface of the road, except the iron rails which were about three inches high. The portion of the road occupied by the railroad tracks was not suitable for travel with teams or vehicles; but the space on either side of the railroad was used by the public to drive or walk on, there being a foot-path on either side of the road, and an ordinary wagon-track between it and the railroad, with room to turn out. In March, 1886, the plaintiff and the other owners of the property along the railroad deeded to the railway company land for another road-bed, for the purpose of having it remove its tracks from the road; and about August, 1886, the railway company removed its tracks and wholly removed from the road and ceased to use or occupy the same. Cropsey avenue was mapped and laid out, pursuant to chapter 670 of the Laws of 1869, by the town survey commissioners of Kings county, to the width of eighty feet, covering and including the sixty-foot road in question. Under chapter 554 of the Laws of 1881, and the resolutions of the board of supervisors of Kings county, passed in May, 1884, proceedings were instituted, and commissioners were appointed by the Supreme Court for the opening of the avenue. The commissioners, upon their maps annexed to their report, and in their deliberations and by their report, made awards only for the lands lying outside of the sixty feet and within the limits of the eighty-foot avenue, and they did not

make any award for the lands lying within the sixty feet, regarding that as already a public road by user or prescription, or as a private way to the owners of a fee for which no award was necessary. After the confirmation and filing of their report, grading commissioners were duly appointed, by whom or under whose directions Cropsey avenue was graded and constructed to the width of eighty feet, at a cost of $40,521, before the commencement of this action. Assessments for the benefits were laid on the lands adjoining the sixty-foot road, which lands were owned by eight persons, five of whom paid their assessments, amounting in the aggregate to $2,350.41. The assessments upon the land of plaintiffs' testator, adjoining the avenue, amount to about $2,000. James Cropsey died in November, 1861, and in October, 1874, his heirs conveyed to the plaintiffs' testator all their title and interest in the land of the sixty-foot road to the centre thereof, immediately in front of his adjoining land. And the learned judge found as conclusions of law as follows:

" 1. That prior to the opening of Cropsey avenue the said sixty-foot roadway had become a public highway.

" 2. That there had been no dedication of the said sixty-foot strip as a highway by the owners thereof at the time of the opening of Cropsey avenue, but that the same had been opened and used by said owners only as a private way for the few owners of property abutting thereon, the public, however, having actually used the same.

" 3. That the public having used said strip as a highway for ten years before the introduction of the steam railway thereon, and having in addition thereafter used that portion of the said strip not occupied by the track or bed of said railway for the purposes of a highway for more than ten further years, said sixty-foot strip thereby became a public highway.

" 4. That as between the owner or owners of the fee of the land covered by said roadway and the adjacent landowners, such said roadway was at least a private way, and so the land was burdened with a permanent and perpetual easement of way for the benefit of the latter.

" 5. That the order of the Supreme Court confirming the report of the commissioners appointed for the opening of Cropsey avenue, is an adjudication binding upon the parties to this action, and as such constitutes a bar to this action, precluding the maintenance thereof.

" 6. That, after the completion of the improvement, the defrayal of its cost and the payment of their assessments by some of the owners of the lands assessed for benefits resulting therefrom, it was as a question of substantial law (the defendant having waived all objections to the form of remedy), too late for the plaintiff to claim by any form of remedy whatever that the improvement did not legally include the said sixty-foot roadway.

" 7. That the defendant is entitled to judgment dismissing the complaint, without costs, and I order and direct that judgment be entered accordingly."

The plaintiffs appealed to the General Term from the judgment, and there the judgment was reversed and a judgment ordered for the plaintiffs, giving the relief demanded in the complaint, with costs.

*William Sullivan* for appellant. The road was a public highway even as between the public and the owner of the fee; secondly, it was a public passage-way, at least as between such owner and the proprietors of the adjoining lands. (1 R. S. 521, §§ 99, 100; *Devenpeck* v. *Lambert,* 44 Barb. 596; *W. Cemetery* v. *R. R. Co.,* 68 N. Y. 591; *Moore* v. *B. C. R. R. Co.,* 108 id. 98; *Rex* v. *Lloyd,* 1 Camp. 262; *Jarvis* v. *Dean,* 11 C. L. Rep. 221; 3 Bing. 447; *Trustees, etc.,* v. *Finis,* 5 C. & P. 460; 20 Wend. 115; 22 id. 435, 436.) The law will not permit a revocation of the dedication of land to public use where the public accommodation and private rights would be materially affected by an interruption of such use. (*City of Cincinnati* v. *White,* 6 Pet. 431.) The conduct of James Cropsey and his heirs, upon which both the public and the grantees of adjoining lands relied, estop the plaintiffs from claiming that the road had never become a public highway by

dedication and acceptance. ( *W. Cemetery* v. *R. R. Co.*, 68 N. Y. 591; *Roberd* v. *Sadler*, 104 id. 229.) Had awards been made for the land, the amounts thereof would have been assessed on the adjoining lands, which would have been a flagrant violation of the rights of the owners of such lands. (*Huttermir* v. *Albro*, 18 N. Y. 48; *Smyles* v. *Hastings*, 22 id. 217; *W. Bank* v. *Nichols*, 64 id. 65, 73; *In re Ingraham*, 4 Hun, 495; *De Witt* v. *Vil. of Ithaca*, 15 id. 568; *Newman* v. *Ellis*, 97 N. Y. 285; *In re Seventeenth Street*, 1 Wend. 262; *In re Lewis Street*, 2 id. 472; *Livingston* v. *Mayor*, *etc.*, 8 id. 85; *Wyman* v. *Mayor*, 11 id. 487; *In re Thirty-first Street*, 19 id. 127; *In re Thirty-ninth Street*, 1 Hill, 191; *People* v. *Lambert*, 5 Den. 1; *In re Comrs. of Central Park*, 54 How. Pr. 313; *In re Sixty-seventh Street*, 60 id. 264.) The proceeding for the opening of Cropsey avenue was a judicial proceeding, to which the plaintiffs' testator was a party, and in which he could have asserted the claim presented herein. (*Stuart* v. *Palmer*, 74 N. Y. 183; *In re DePeyster*, 80 id. 565; *In re Middletown*, 82 id. 196, 201; *In re Church*, 92 id. 1; *In re Mayor, etc.*, 34 Hun, 441, 446; 99 N. Y. 570, 580; *In re U. E. R. R. Co.*, 112 id. 61; *Dolan* v. *Mayor*, *etc.*, 62 id. 472; *In re Dept. of Parks*, 73 id. 560, 565; *Pittman* v. *Mayor, etc.*, 3 Hun, 370; 62 N. Y. 637; *M. E. Church* v. *Mayor, etc.*, 55 How. Pr. 57; *Pray* v. *Hegeman*, 98 N. Y. 351.) The judgment of the General Term ought to be reversed and that of the Special Term affirmed. (*In re Woolsey*, 95 N. Y. 142; *In re Spuyten Duyvil Parkway*, 67 How. Pr. 341; *Pryzbylpwiez* v. *M. R. R. R. Co.*, 3 McCrary, 586; *Astor* v. *L'Amoreux*, 8 N. Y. 107; *Foot* v. *Æ. L. Ins. Co.*, 61 id. 571; *Ehrichs* v. *De Mill*, 75 id. 370; *Guernsey* v. *Miller*, 80 id. 181; *Thomas* v. *L. Ins. Co.*, 99 id. 250.)

*William C. De Witt* for respondents. The opening commissioners were bound, in law, to acquire and provide for the public an avenue eighty feet wide. (*People ex. rel.* v. *Haines*, 49 N. Y. 587, 593, 594; *Hassen* v. *City of Rochester*, 65 id. 516; *Newell* v. *Wheeler*, 48 id. 486–490; *Doughty* v. *Hope*, 3 Den.

594, 599.) The "sixty-foot strip," lying in Cropsey avenue, in front of the plaintiffs' premises, had not become a highway by dedication or prescription. (*Holdale* v. *Vil. of Cold Spring*, 21 N. Y. 477; *Cook* v. *Harris*, 61 id. 448; *Carpenter* v. *Gwinn*, 35 Barb. 335; *N. F. S. B. Co.* v. *Buchanan*, 66 N. Y. 269; *Badeau* v. *Mead*, 14 Barb. 339; Greenl. on Ev. 580.) The public acquired no title to the "sixty-foot strip" by user or prescription, as a highway. (Chase's Blackstone, 419; 3 Washb. on Real Prop. 51, 53, 92; *Nichols* v. *Wentworth*, 100 N. Y. 455, 460; *Ward* v. *Warren*, 82 id. 268; *Wiseman* v. *Lucksinger*, 84 id. 31; *Colvin* v. *Burnett*, 17 Wend. 567; *Strong* v. *Brooklyn*, 68 N. Y. 1; *Parker* v. *Foote*, 19 Wend. 308–310; *Hart* v. *Vose*, 19 id. 363, 365.) Even if the statute has so modified the rule as to dispense with the acquiescence of the owner as a condition of the use essential to create an easement, still it does not affect the condition, that the use by the public must be under a clear and unequivocal claim and determination upon its part, to subject the lands to the convenience of a highway exclusively. (*Heard* v. *City of Brooklyn*, 60 N. Y. 242; *Strong* v. *City of Brooklyn*, 68 id. 1; *Lahr* v. *M. E. R. Co.*, 104 id. 268; *Story* v. *N. Y. E. R. R. Co.*, 90 id. 122; *Pitcher* v. *N. Y. L. E. R. R. Co.*, 5 Sandf. 599; *Roberts* v. *Karr*, 1 Campb. 262; *Lethbridge* v. *Walter*, Id; *Commonwealth* v. *Newberry*, 2 Rick. 57; Wheat. on Easements, 122; *Barker* v. *Clark*, 4 N. Y. 284; Gibbon on Dilapidations, 148.) The order of the Supreme Court is not an estoppel, by adjudication, of the questions presented in this action. (*Miller* v. *Brown*, 56 N. Y. 383; *People ex. rel.* v. *Liscomb*, 60 id. 568; *Elliott* v. *Peirsal*, 1 Pet. 328; *In re Douglas*, 46 N. Y. 44; *In re Comrs. of Central Park*, 50 id. 493; *Bank of Utica* v. *City of Utica*, 4 Paige, 399; *Gradin* v. *LeRoy*, 2 id. 309; *In re Rhinelander*, 68 N. Y. 105; *Snyder* v. *Plass*, 28 id. 465.) The deed of the railroad company to the town was invalid, and upon the abandonment of the land by the railroad company it reverted to the owner of the fee. (*Heard* v. *Brooklyn*, 60 N. Y. 242; *Strong* v. *Brooklyn*, 68 id. 1.) No question of

the applicability of equity jurisdiction, or as to the appropriateness of the remedy sought by this action can now be raised. (*Bank of Utica* v. *City of Utica*, 4 Paige, 399; *Grandin* v. *LeRoy*, 2 id. 509; 4 Cow. 727; *Hassen* v. *City of Rochester*, 65 N. Y. 516.)

EARL, J. Cropsey avenue was planned, mapped and laid out under the act, chapter 670 of the Laws of 1869, and it was opened to the width of eighty feet, and graded and mapped under certain resolutions adopted by the board of supervisors of Kings county, by authority of the act, chapter 554 of the Laws of 1881. Under those resolutions, opening commissioners were appointed by the Supreme Court, who estimated the damages caused to the owners of lands taken for the avenue, and made awards therefor to such owners, and assessed such damages upon the lands which, in their judgment, were benefited by the opening of the avenue. Subsequently grading commissioners were appointed under the same resolutions, and they opened, graded, constructed and improved the avenue, and assessed the expense thus incurred upon the lands which, in their judgment, were benefited by the improvement; and it is this assessment of which the plaintiffs complain. They assail it on the ground that the old sixty-foot road was not a highway; that the land embraced therein was private property and was not taken or condemned by the opening commissioners, and that, therefore, the work thereon by the grading commissioners constituted a trespass, for the expense of which no assessment could be legally made. If they are right in their contention that the sixty-foot road was not a public highway, we see no reason to doubt that this action can be maintained.

The sixty-foot road never having been laid out as a highway prior to the action taken under the act of 1869, could become a highway in only one of two ways, either by dedication or user. There was much proof that the sixty-foot strip of land had been dedicated by the owners for a highway. It was opened and fenced and used by the public generally for

travel for more than twenty years. It was mentioned as a road in various deeds and maps. But it is admitted that Cropsey and Spier, who owned the land and opened the road, at the time of the opening and during subsequent years, repeatedly declared that the road was a private way belonging to them and the other owners of land lying upon it, and that they had the right to close it whenever they saw fit. It does not appear under what circumstances these declarations were made. They could not have been made later than November 15, 1861, as Cropsey died at that date. Nor does it appear that the public authorities accepted the dedication, or in any way adopted the road as a highway by working it or forming it into or annexing it to a road district. The trial judge was, therefore, justified in holding that it was not a highway by dedication. (*Holdane* v. *Trustees of the Village of Cold Springs*, 21 N. Y. 474; *Cook* v. *Harris*, 61 id. 448; *Niagara Falls Suspension Bridge Co.* v. *Bachman*, 66 id. 261; *People* v. *Loehfelm*, 102 id. 1; *Badeau* v. *Mead*, 14 Barb. 328; *Clements* v. *Village of West Troy*, 16 id. 251.)

The trial judge found that the sixty-foot road became a highway by user under the Revised Statutes (1 R. S. 521, § 100), which provides that " all roads not recorded which have been or shall have been used as public highways for twenty years or more, shall be deemed public highways." The full scope and meaning of the words " used as public highways" are not quite certain. The user need not be adverse, and under such circumstances as would be required to give an individual a right of way by prescription. If such had been the intention, other language would, we think, have been used. All we have here is that " the road was used by the public generally." But the mere fact that a portion of the public travel over a road for twenty years cannot make it a highway; and the burden of making highways and sustaining bridges cannot be imposed upon the public in that way. There must be more. The user must be like that of highways generally. The road must not only be traveled upon, but it must be kept in repair or taken in charge and

adopted by the public authorities. We think all this is implied in the words "used as public highways." Although the owner of land may not dedicate it for a public highway, and may not intend or assent that it shall become such, yet if he permits it to be used in the way just indicated for twenty years it would be deemed a public highway, and he will not be permitted to question the public right. The views of judges as to the proper construction of the statutory provision quoted have not been harmonious. (*Galatian* v. *Gardner*, 7 Johns. 106; *Wiggins* v. *Tallmadge*, 11 Barb. 457; *Village of Jordan* v. *Otis*, 37 id. 50; *Devenpeck* v. *Lambert*, 44 id. 596; *Vandemark* v. *Porter*, 40 Hun, 397; *In re Bridge*, 100 N. Y. 642; *Rozell* v. *Andrews*, 103 id. 150; *Strong* v. *Makeever*, 102 Ind. 578; *Potter* v. *Safford*, 50 Mich. 46.) Here there is no proof of the circumstances under which the public traveled upon this road, and it does not appear that the public authorities kept it in repair or adopted it, or in any way recognized it as a highway. A private way opened by the owners of the land through which it passes for their own uses does not become a public highway merely because the public are also permitted for many years to travel over it. (*Shellhouse* v. *State*, 110 Ind. 509.) Hence, the trial judge erred in holding that the sixty-foot road became a public highway by user.

The trial judge also held that the order of the Supreme Court confirming the report of the opening commissioners, is an adjudication binding upon these parties, and as such, constitutes a bar to this action; and in this, we think he erred. The commissioners made no adjudication as to the sixty-foot road, and had no right to make any in reference thereto, and that road was in no way brought into litigation by their report or upon the confirmation thereof. They simply took land on each side of the sixty-foot strip so as to make an avenue eighty feet wide, and it was only the land so taken that was involved in that proceeding. They made no award for the sixty-foot strip of land, and there was no adjudication in reference thereto that binds anyone.

The trial judge seemed to be of the opinion that if the sixty-foot road was a mere private way, and so the land was burdened with a permanent and perpetual easement of way for the benefit of the different land owners, the owners of the fee in the sixty-foot strip could not complain of the entry thereon, and the improvement thereof as a public highway; and in this he erred. Clearly, if the land was burdened with only such a private easement, it could not be taken and condemned for a public highway without some compensation to the owners of the fee.

The fact that some of the owners of land assessed paid their assessments, does not estop the plaintiffs from assailing the assessments in question, or forbid the maintenance of this action. No facts are shown upon which an estoppel can be based. Mere delay in the commencement of this action, during which some of the others voluntarily paid their assessments, not choosing to contest them, does not deprive them of their remedy. There might be circumstances out of which an estoppel could arise, but they do not appear here.

We do not agree with the General Term that the existence of the railroad upon the road, during a portion of the twenty years, defeats the claim of a highway by user. The railroad was built upon the road, and it was a public use for travel. But, it was a new burden superinduced upon the prior easement, and hence required the consent of the owners of the fee. It did not change the essential character of the road. It still remained a road and was used for public travel, the centre being used by the railroad tracks. The strip of land was open to the public, and travelers could pass over every part of it, except that it was not practical for vehicles to pass over the tracks. If the user was otherwise sufficient to constitute the road a highway, the presence of the railroad tracks was an immaterial circumstance.

Our conclusion, therefore, is that the judgment of the Special Term was properly reversed. But judgment should not have been given for the plaintiffs, and a new trial should have been ordered. Upon the new trial, the facts may be

more fully brought out. It will be open to the plaintiffs to produce new evidence upon the question of dedication. Upon that question, the declarations of Cropsey and Spier, which now appear in the record, will not necessarily be decisive. The case may be such that, upon all the evidence, it will be a question of fact whether there was a dedication and acceptance thereof by the public authorities within the rules of law upon the subject. So, too, upon the new trial, other and fuller evidence may be given as to the user of the road, and it may be shown that there was such a user within the principles above laid down as to show that in law this road became a public highway by user.

The judgment of the General Term should, therefore, be modified, so as to order a new trial, costs to abide the event.

All concur.

Judgment accordingly.