DEAN v. CARROLL et al.

(Supreme Court, Equity Term, Erie County. July, 1913.)

1. HIGHWAYS (§ 7*)—ESTABLISHMENT BY USER.

A road never laid out and established by the town authorities, but traveled by the public for 20 years, and either kept in repair by or taken in charge of the public authorities, is a highway.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 10, 12–14, 16, 18; Dec. Dig. § 7.*]

2. HIGHWAYS (§ 14*)—ESTABLISHMENT BY USER—LOCATION.

Location of a highway established by user for 50 years is defined by substantial fences erected on both sides by the abutting owners and maintained for the last 40 years of such period.

[Ed. Note.—For other cases, see Highways, Cent. Dig. § 21; Dec. Dig. § 14.*]

3. HIGHWAYS (§ 83*)—ABUTTING OWNERS—QUARRYING STONE.

The owner of the abutting lands and the fee of a country highway has the right to quarry the stone under it; he constructing and maintaining a good temporary road during the time of removal and thereafter restoring the highway.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 292, 293; Dec. Dig. § 83.*]

Action by Mary Dean against William E. Carroll and another. Judgment for plaintiff.

William D. Van Pelt, of Buffalo, for plaintiff.
Clinton, Clinton & Striker, of Buffalo, for defendants.

POOLEY, J. This is an action to abate a nuisance, to compel defendants to restore a highway, and for damages.

Plaintiff for many years has been, and now is, the owner in fee of a farm of about 41 acres, fronting upon the Sulphur Spring Road, otherwise known as the Fogelsonger Road, in the town of Amherst, Erie county, N. Y., and distant northerly about one-half mile from the main road leading from Buffalo to Williamsville, and beyond. On this farm is located a gristmill patronized by farmers in the vicinity.

The defendants for several years have been the owners in fee of the premises fronting on this main road and extending both sides and including the Sulphur Spring Road, subject to the right of the public to use it.

[1] It does not appear that this road was ever laid out and established by the town authorities, but it does appear that it has been used as a public highway for over 50 years in the sense that people have freely passed over it. To make it a public highway, it must have been traveled by the public for 20 years, and either kept in repair by or

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

taken in charge of the public authorities (Speir v. Town of Utrecht, 121 N. Y. 420, 24 N. E. 692), and, where it appears that there has been such a user by the public for more than 20 years as would have justified the record of the road as a highway by the proper authorities, "their failure to perform their duty does not change the mandate of the statute that the road shall be deemed a public highway." Lewis v. N. Y., L. E. & W. Ry. Co., 123 N. Y. 496, 501, 26 N. E. 357, 359.

There is some recognition of it by the defendants in that they applied to the commissioners of highways of the town for permission to construct and maintain a railroad switch upon and across this road, and contracted with them for the temporary changing of the road, and they do not dispute the contention that it is a public highway.

[2] Assuming then that it is established as a highway, the next proposition is to correctly locate it. A road that has not been recorded or accurately defined by public authority can best be located by physical conditions on the ground. It is contended by plaintiff that taking as a fixed point the location of certain iron pipes in this road at the north end of defendants' land, defining the center line, this line extended southerly from this point to the main road would constitute the center line throughout its length. Defendants contend differently, and both sides have called expert surveyors to solve the problem, the solution of which involves the location of a stone crusher, and the question as to whether or not it encroaches upon this road.

The defendants have shown that the former owners of this property had a large stone house on the west side of this road, and facing the main road; and that they had erected and maintained substantial picket fences on both sides of the road in question for 40 years, and up to the time when defendants commenced the excavations complained of, and which will be later referred to. These picket fences were 33 feet apart with the roadway practically midway between. These facts are not disputed, and, inasmuch as they define the road as used for 40 years, they must be regarded as conclusive. The road as thus defined is not encroached upon by the structure used as a stone crusher.

[3] The defendants, being owners of the fee, subject to the right of the public to use the surface of the road as a highway, the right of the owner to excavate within its bounds is next to be considered. It appears without dispute that a large part of defendants' land, including the portion used as a highway, was underlaid by valuable stone suitable for building and other purposes. They had quarried this stone up to the north line of said road, and then applied to the town board for permission to take out the stone beneath the road. The board authorized the making of a contract between the defendants and the town, the terms of which were that the removal of the stone was permitted on consideration that they restore the road to its original condition, and that they build a road, macadamized with stone to the satisfaction of the highway commissioners of the town. The only point of difference regarding the contract was that of the time within which the road was to be restored. Mr. Ouchie, town clerk, testifies that it was to be within two years from the date of the contract, while Mr. Carroll, one of the defendants, testifies that it was to be

within two years of the time they began to make the excavation. The contract was executed in the summer of 1909, and the excavation began in the summer of 1910. This action was commenced April 2, 1912. The temporary road was made and maintained, starting about 450 feet north of the main road between Buffalo and Williamsville, and curving to the east, and striking said main road about 350 feet east of the original road, and it so continues, notwithstanding the expiration of the two years. The defendants have testified that it was their intention to fill the excavation and restore the road within the time agreed upon, but owing to labor conditions they, were unable to do so, but that they intended to do so as soon as conditions permitted. The temporary road so constructed was and is as good a road as the old; the difference being that it is not straight. The defendants ceased operating the stone crusher in 1911.

The evidence warrants the conclusion that, during the operation of excavation, the temporary roadway was shifted several times as the work progressed, and the road therefore could not be and continue a good road for travel. Since the operation was discontinued, the road has come to be as good as the remaining part of this highway.

At the suggestion of counsel on both sides, and in their company, I visited the property, and am satisfied as to this fact. It cannot be said, however, that the method adopted, of shifting the road from time to time, conformed to the contract. If the road, as now maintained and used, had been laid before any excavation within the old highway lines had been made, and which was fairly within the contemplation of the contract, the plaintiff would have had little, if any, cause to complain. It is out in the open country, and, while the property in the vicinity is used for farming purposes, the stone beneath the surface of the ground upon this property of the defendants is probably of far greater value than the land would be for farming purposes.

In Town of Clarendon v. Medina Quarry Co., 102 App. Div. 217, 92 N. Y. Supp. 530, almost the identical situation and conditions are presented, and it was held that the defendant had the right to remove the stone. See, also, Dygert v. Schenck, 23 Wend. 446, 35 Am. Dec. 575; Sweet v. Perkins, 115 App. Div. 784, 101 N. Y. Supp. 163; Tinker v. N. Y., O. & W. Ry., 157 N. Y. 312, 51 N. E. 1031.

This case narrows down to the question whether or not the defendants, in making this excavation, have done so with due regard to the rights of the public and in a manner to not unreasonably interfere with those rights. The reason offered for their failure to fill and restore the road, while forceful, is not conclusive. Laborers are employed on other work, public and private, and so could have been put upon this work. It is clear, of course, that with laborers scarce a prudent man would place them to his best advantage; but here is a duty to the public, and, while perhaps unremunerative to defendants, it should be done. The public are entitled to have the road restored.

The plaintiff contends that she has been damaged. Whether the road strikes the main road at one point, or 350 feet eastward, except for the fact of the turn, is of little consequence. Roads deviating from a straight line are not confined to the country, and even in cities

and villages they are common, and occasion little, if any, inconvenience, and the damage from this cause would, at best, be nominal. But I think the shifting of the road from place to place would result in inconvenience, and the evidence fairly indicates that for some considerable time the road was bad and not in accord with the contract.

The conditions, however, are temporary, and not permanent, and, when the road is restored, it cannot be said that the land of the plaintiff will be less valuable than before, or its rental value decreased.

I think $100 is ample to cover all damages sustained, and judgment may be entered for that amount, with costs. Findings may be prepared covering also the restoration of the road within one year, and the maintenance of the temporary road in the meantime.