# Court of Appeals.

January 15, 1895.

## PEOPLE v. CLARA M. UNDERHILL.

(63 St. Rep. 710; 144 N. Y. 316.)

1. Highway—Dedication.
   > The laying down upon a map, made by the grantor, of certain lands as avenues or streets and the conveying of other lands as bounded by them, amount to a dedication.

2. Same.
   > But before such dedication becomes complete, an acceptance thereof, either by user or by formal act of the public authorities, must be shown.

3. Same.
   > The evidence, in this case, was held sufficient to show a dedication of the avenue as a public street, but insufficient to show an acceptance thereof east of the lots sold.

Appeal from judgment of the general term of the supreme court in the second judicial department, entered upon an order, which affirmed a judgment convicting defendants upon an indictment for maintaining a nuisance in obstructing a highway, entered upon a verdict of the court of sessions of Westchester county.

Prior to 1859 the state of New York was the owner of a certain parcel of land in the village of Sing Sing, known as the prison or state farm. In that year the legislature passed an act providing for its sale by the inspectors of state prisons. Pursuant to that authority the inspectors made a map of the farm and sold it to one Thomas Nelson and others on the 23d of November, 1859. On that map several streets were laid down as running through this farm and among them was a street without any name running from Highland turnpike to Spring street. The street was subsequently called Lafayette avenue. The deed from the inspectors of state prisons to Nelson and others, in conveying the farm, contained the following

reservation: "Also excepting and reserving to the public the right of way over said two streets to the width of twenty-five feet south of said central line above described, a width of twenty-five feet on each side of the continuation of the southernmost of said central lines. Westerly to the said Spring street, which new streets are forever to be kept open to the width of twenty-five feet on each side of said center line from Spring street to the Highland turnpike for the purposes of a public street or highway for the benefit of the owners and purchasers of the adjoining lots."

Highland turnpike, subsequently called Highland avenue, runs north and south on the eastern boundary of the farm. Spring street runs parallel with Highland avenue and is the western boundary of such farm and some 1,225 feet west of Highland avenue. They are both old public highways in Sing Sing village. Lafayette avenue runs from Highland avenue to Spring street. On the first of September, 1866, Nelson and others (the grantees from the state) conveyed to one Edward Everitt six and one-half acres of this farm, and described the land as "beginning at the Albany post road" (now Highland avenue) "and Lafayette avenue as designated on a map now on file in the office of the register of the county of Westchester, entitled 'A map of a tract of land at Sing Sing, town of Ossining, county of Westchester, the property of Messrs. Nelson, Larkin, Cobb, Cartwright, Jr., and Jones, laid off in town lots and gentlemen's country seats, by Geo. W. Cartwright, Jr., C. E., July, 1860." The description then continues and includes the six acres and describes the northern boundary as running "along the center of Lafayette avenue 651 feet, to the said Albany post road to the place of beginning." On the 7th of November, 1889, Edward Everitt conveyed the same premises to the defendant. Clara Mason Underhill, by the same description that is contained in the deed from Nelson and others to Everitt. At the time when this map, mentioned in the deed from Nelson and others to Everitt, was made and the deed executed, the land forming what is laid down on the map as Lafayette avenue was farm land, and that avenue has never been opened or worked. It was farm land most of the way between Highland avenue and Spring street,

and there were no fences or other monuments indicating to the eye the line of Lafayette avenue. When Everitt took title by deed from Nelson and others to a portion of the original state farm he ran his westerly line of fence north and south across the land constituting Lafayette avenue as laid down on the map. This westerly line was 800 feet east of Spring street. He remained in possession as owner from the time of the deed to him in 1866 until he conveyed to Mrs. Underhill, one of the defendants herein, in November, 1889, and the whole country west of his west line up to Spring street had been up to that time and thereafter remained open and unmarked by any boundaries showing the line of the street up to within 200 feet east of Spring street. The grantors in the deed to Everitt themselves maintained fences across the land constituting Lafayette avenue west of the defendants' west line and up to within a few feet of Spring street, and as they from time to time sold off lots on either side of Lafayette avenue, and within the space of a couple of hundred feet east of Spring street, they would take down the fence and remove it further to the east so as not to interfere with those who intended to build and live in the houses. There was never any work done east of the houses built along the westerly end of Lafayette avenue up to within a short time before the finding of this indictment, when Mr. Cartwright, one of the grantors, in the deed to Everitt did some grading from Spring street up to the westerly line of defendants' premises. There was no evidence of any user of Lafayette avenue by the public for any portion of its distance as laid down on the map, with the exception of the 200 feet immediately east of Spring street and upon which, commencing in 1872, about eleven houses had been built by the grantees of Nelson and others. Mr. Everitt himself, while the owner of the six acres, had done some work upon that portion of Lafayette avenue fronting his premises, but it was for his own con-venience and to better enable him to reach his house from Highland avenue, which he had built on the north portion of his land. The grade from the westerly boundary of his prem-ises towards Spring street was quite steep and the top of the grade was about half way between his westerly line and the easterly line of Spring street. During these years, from the

time when the land was conveyed to Nelson and others by the inspectors of state prisons up to the time of the finding of the indictment against the defendants, various things had been done, as was claimed by the prosecution, by way of showing an acceptance on the part of the village of Sing Sing of the alleged dedication of this Lafayette avenue by the prison inspectors as a public street. Upon the trial the prosecution claimed to have proved that the public authorities of the village of Sing Sing had worked the street and made a map of it; had permitted gas lights to be put up, and had made a map for a system of sewerage for the lower part of the village, which included the avenue; that they had also laid water pipes therein and caused gutters and sidewalks to be laid in it, and had assessed property as bounded by the avenue; had put up signs at each end, and caused a sidewalk or crosswalk to be laid at the entrance of the avenue on Highland avenue. All these acts were alleged to have been done by the public authorities, and it was insisted that they constituted that kind of formal action on their part which was necessary in order to show an acceptance of the land in question for a public highway. The prosecution also proved on the trial that the defendants obstructed this alleged highway by continuing their fence across it and by building structure thereon which they refused to take down, either at the demand of Mr. Cartwright, one of the grantors in the deed to Everitt, or of the president of the village.

On the trial the judge charged the jury that there was no proof of user sufficient to make a highway of Lafayette avenue, but he submitted to the jury the evidence on the question of the acceptance of the alleged dedication of Lafayette avenue with the instruction that if they found the facts in accordance with the People's construction of the evidence a sufficient acceptance had been proved. Proper exceptions were taken to the ruling of the court, as to raise the question whether there had been a dedication, and if so, whether there had been a proper acceptance by the public authorities of the village. The jury found a verdict of guilty, and judgment was thereupon entered, which was affirmed by the general term.

Calvin Frost, for appellant.

W. Popham Platt, for respondents.

PECKHAM, J.—In the view we take of this case it will not be necessary to determine whether the state prison inspectors could legally have laid out by dedication on the part of the state a public highway through the land which they were authorized to sell for the state. They assumed to do so, and in the map filed by them this so-called Lafayette avenue is laid out. In their deed to Nelson and others they expressly reserve the right of way over the land designated on the map as new streets and dedicate such land to the public as a public highway, for the benefit of the public and for the owner and purchasers of the adjoining lots. The grantees in that deed themselves recognized these various new streets and made a map which is called the Cartwright map, upon which the strets are laid out, and in their deed to Mr. Everitt, when describing the land, they use language, "beginning at the Albany post road and Lafayette avenue, as designated on the map now on file," etc., and they continue their description and bound the land conveyed in that deed "along the center of said avenue 651 feet to the said Albany post road." These parties as grantees from the inspectors and as owners of the land certainly would have had the right to open streets through it and they could dedicate such streets to the public. Laying down upon the map made by themselves certain lands as avenues or streets and conveying other lands as bounded by them, amounts to a dedication as has been held in very many cases. In the Matter of the Application for an Extension of Lewis Street, 2 Wend. 472; Livingston v. The Mayor, 8 id. 85; Wyman v. The Mayor, 11 id. 487; Willoughby v. Jenks, 20 id. 94; Lord v. Atkins, 138 N. Y. 184; 52 St. Rep. 155.

We think the evidence in this case was sufficient to show a dedication by the proper parties of Lafayette avenue as a public street. The criticism made that the deeds from Nelson and others to Everitt, and from Everitt to Underhill, make no mention of Lafayette avenue as being a public street, we think is not well founded. Both deeds refer to Lafayette avenue and they refer to it as designated on the map then on file in the office of the register of the county of Westchester, and they bound their land along the center of the avenue. It is not necessary we think under these circumstances to state that

they mean by the word "avenue" a public street.   The word, as used in the deeds and upon the map, furnishes evidence of a dedication and implies a public street, and the intention to dedicate the land for a public street would not be made plainer by adding that they mean by the word "avenue" a public street, to be called Lafayette avenue.

We are of the opinion, however, that there was no sufficient evidence of an acceptance of this dedication either by way of user or by any formal or conclusive action on the part of those public authorities of the village of Sing Sing who would have the authority to accept a dedication to the public.   The trial court eliminated one way of showing acceptance by the user of the street, and, we think, properly so.   There was really no evidence of user as a street.   The street never has been used and is not now used as a public highway for the passage of men and vehicles from Highland avenue to Spring street. The only user proved was a couple of hundred feet east from Spring street, and that was used by the people who were building houses and for their accommodation only, and it was almost an impossibility to drive or ride from that point east to Highland avenue; indeed, Cartwright himself had a fence across Lafayette avenue.   There being no user, there must have been proof of an acceptance by some formal and unambiguous action on the part of the authorities of the village having that power and showing unmistakably an intention to accept the land thus dedicated and for the purpose to which it was to be put.

As was said in the case of Niagara Falls Susp. Bridge Co. v. Bachman, 66 N. Y. 261 at 269, "to constitute a public highway by dedication there must not only be an absolute dedication, a setting apart and a surrender to the public use of the land by the proprietors, but there must be an acceptance and a formal opening by the proper authorities, or a user."   In Holdane v. The Village of Cold Spring, 21 N. Y. 474, the same doctrine is announced, and it is there said that an acceptance of the dedication, either by user or by formal act of the public authorities, must be shown before a dedication becomes complete.   To the same effect is the case of Speir v. The Town of New Utrecht, 121 N. Y. 420; 31 St. Rep. 414, although the question there was

more in regard to the character of the user than to the formal action on the part of the public authorities. It was there held that the mere fact that a portion of the public had traveled over the road for twenty years would not make it a highway; that the user must be like that of highways in general and the road must not only be traveled upon, but it must be kept in repair, taken in charge and adopted by the public authorities. That was on the question of user. In this case no formal acceptance of this dedication on the part of the public authorities has been shown. The various items of proof referred to by the counsel for the People for the purpose of showing something equivalent to a formal aceptance, we think, are wholly inadequate to meet that requirement. So far as working the street is concerned, the only evidence that the public authorities had ever worked it at all consists of the statement made by the clerk of the village that the village had laid a sewer in the street for a couple of hundred feet east from the line of Spring street, and he believed that some sidewalk had been there laid. Under what circumstances he did not say. The people who built the few houses along the western end of Lafayette avenue may have asked the village to lay a sewer for their accommodation and also a sidewalk as far along the street as the houses continued to the east from Spring street. The authorities may have complied with their request. But that is no formal acceptance of a dedication of the whole street from Highland avenue to Spring street, a distance of nearly 1,300 feet, by any public authority of the village authorized to speak or act for it in such case and thus to bind the village by its action. There is no evidence of any such acceptance. The village has done no act from which an acceptance of this dedication can properly be inferred. It is claimed that a map of the street was made and filed. That mere fact is wholly immaterial. There was a map laying out a general system of sewerage for the southern portion of the village, and it would, in any event, very properly include the land in question which might be thereafter drained by the sewer, although such street was not then opened or accepted as a public highway. There is also evidence that electric lights had been placed in one portion of the street, but under what circumstanecs, or upon what conditions or how

many, was not stated, and that water pipes had also been laid in the street the same distance as the sewer for the accommodation of those few houses above mentioned. It is seen that the village had done no work whatever on any portion of this street other than the 200 feet directly east from Spring street, and there is no evidence under what circumstances such work was done, or that it was done by such authority as might bind the village on a question of acceptance of a dedication of land for a street. The mere assessment by assessing officers of lands which they described as being on Lafayette avenue is no evidence whatever of a proper acceptance, nor, under the circumstances, was the putting up of signs at each end of the street naming it Lafayette avenue. The authorities of the village had directed signs to be placed at the corners of all the streets in the village, without designating any particular street or in any manner deciding that Lafayette avenue was a public street of the village and the resolution had been referred to a committee to carry out its purposes. That committee referred it to the clerk, who employed a painter, who painted various signs, and among them he included Lafayette avenue, and the sign was put up. The directing of a sidewalk to be laid at the entrance of this street on Highland avenue is no evidence of an acceptance of Lafayette avenue. In fact, there is an entire absence of proof of any unequivocal act on the part of the village authorities showing a formal acceptance of the avenue in question from Spring street to Highland avenue.

What rights the abutting owners on the avenue may have as between each other and as against the defendant Mrs. Underhill, as one of such owners, by reason of the various deeds from Thomas Nelson and others recognizing the existence of Lafayette avenue, it is not necessary here to discuss or decide. They may have easements or rights of way as among themselves not touched by this proceeding. Hennessy v. Murdock, 137 N. Y. 317; 50 St. Rep. 717; Cunningham v. Fitzgerald, 138 N. Y. 165; 51 St. Rep. 840; Lord v. Atkins, 138 N. Y. 184; 52 St. Rep. 155. We simply say that the People in this criminal action have failed to show that the defendants were guilty of maintaining a nuisance by obstructing a public highway called Lafayette avenue at the place described in the indictment, and

the jury should, therefore, have been instructed to acquit them.

We think the judgment should, therefore, be reversed and a new trial granted.

All concur, except HAIGHT, J., not sitting.

Judgment reversed.