(47 App. Div. 102.)

### In re HUNTER.

(Supreme Court, Appellate Division, Third Department. January 8, 1900.)

1. DEDICATION—REVOCATION.
　　Where the owner of land laid out a certain street, but, before it was accepted, closed it by fences, and opened another street in a different place on the property, such act constituted a revocation of the first street, and indicated an intent to dedicate the latter.

2. SAME.
　　Laws 1891, c. 286, § 31, provides that all streets which have been thrown open to public use, or have been or may be used as such for five years continuously, shall be deemed and taken to be public streets, provided the city council shall by a two-thirds vote of all its members accept them. *Held* that, though land dedicated for a city street had been traveled by the public as such for more than five years, yet where the city neither repaired, nor did any act tending to show an acceptance thereof, until after a grantee of the dedicator revoked such dedication by effectually closing the entrances thereto, after which the city council accepted it, there was no completed dedication sufficient to authorize the improvement of the street.

Appeal from special term, Albany county.

Application by Margaret A. Hunter for the vacation of a street assessment. From an order denying the application (59 N. Y. Supp. 874), petitioner appeals. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and KELLOGG, JJ.

W. Frothingham, for appellant.
John A. Delehanty and T. F. Wilkinson, for respondent.

PARKER, P. J. From the evidence in this case, I am satisfied that Hunter intended to revoke the dedication of Rawson street, as designated on the map of 1873, between Third street and Livingston avenue, and to substitute in its place the street as laid down on the map of 1889. I should doubt the sufficiency of the evidence to support this conclusion, were it not for the fact that Hunter caused the precise street, as laid down on that map, to be located upon the ground, and inclosed with a fence upon either side, thus preparing it for the use as a thoroughfare to which the public thereafter subjected it. The evidence discloses that in the year 1890 the

street as laid out on that map was fenced, and at all times since has remained so. Although it is not shown who fenced it, the reasonable presumption is that Hunter did it. Certainly it must have been done with his acquiescence, and it is to be noticed that both such fences cross the line of the street as it was designated on the map of 1873, and effectually bar all travel through it; thus plainly evincing the intent to abandon such street and revoke its dedication, and as plainly evincing the intent to dedicate the latter street as a highway to the city. See Eckerson v. Village of Haverstraw, 6 App. Div. 102, 104, 39 N. Y. Supp. 635.

The more serious question is whether such dedication has ever been accepted by the city of Albany. There is no dispute but that since 1889, and up to June 4, 1898, such street was used by whoever of the public desired to pass through it, without objection or hindrance from Hunter or his successors. The natural formation of the ground over which it passed was such that it was easily traveled by teams as well as by pedestrians, and it was in fact used to a considerable extent by people in that locality. But I do not discover that the officers of the city having the subject of streets in their charge ever in any way recognized it as a street. They never repaired it or improved it; nor, prior to the ordinance by which the common council accepted it, and which was passed June 6, 1898, did they do any act whatever clearly and unmistakably showing an intention to accept it as a street. It is true that on May 16th a member of that council gave notice that at the next meeting he would introduce a resolution to accept it as a street, and on the same day the council had resolved to build a sewer through "Rawson street, as declared by ordinance to be a public street"; but no action accepting it was taken until June 6th. Had the council on that date seen fit to reject the gift, instead of accepting it, or to accept it over the line proposed by the map of 1873, instead of that of 1889, no previous resolution or action on its part, nor of any city official, would have stood in its way. I think it plain that prior to the passage of that ordinance there had been no direct acceptance of the dedication. People v. Underhill, 144 N. Y. 316, 323, 39 N. E. 333. But an acceptance may be implied from long user by the public, and the question arises whether the use above referred to has operated as an acceptance in this case. The dedication is to the city, and it is the city upon which the burden of maintaining the street and being responsible for its safe condition is imposed. It would seem clear, therefore, that no one other than the city could accept such burden. The city acts through duly-selected officers, to whom is given the charge of its streets, and only those officers may rightfully determine what additional burdens in the way of new streets shall be imposed upon the city. The owner of lands may open a street through them, and it may be greatly to his advantage that the city assume the burden of maintaining it and keeping it in safe and proper repair, and the public may constantly use it as a convenient thoroughfare; and yet the city authorities may deem it unnecessary and most unwise for the city to accept it as a street. Such user by the public is not the user which will amount to an

acceptance. The irresponsible public may not so impose such additional burden upon the city. No formal action or ordinance by the authorities having such matters in charge is needed. If they use the street,—if even by slight acts of repair or improvement they indicate their plain intent to accept it as a street,—the acceptance may be implied from the user. In People v. Underhill, above cited (page 324, 144 N. Y., and page 336, 39 N. E.), Judge Peckham, in referring to the character of user from which an acceptance may be implied, says "that the user must be like that of highways in general, and the road must not only be traveled upon, but it must be kept in repair, taken in charge, and adopted by the public authorities." So there might be instances where the circumstances, and a long user of 20 years and upward by the general public, would indicate that it had been had under charge of the public authorities. In the case before us, however, the dedication with which we have to do was in 1889. The street which is designated on the map of 1873 is so different in its location, and so differently affects the interests of Hunter, and was so clearly abandoned by him when the new road of 1889 was fenced in, that we may not consider any acts of the respective parties prior to 1889 as affecting this question. I conclude, therefore, that neither by user nor by act of the city itself was the dedication which Hunter clearly made in 1889 accepted at any time prior to the passage of the ordinance on June 6, 1898. The dedication of this street was incomplete and of no force until it was accepted, and at any time prior to such acceptance it might be revoked, as against the city, by the one who made it, or by those who succeeded to his interests. The petitioner in this proceeding is Hunter's successor, and on June 4th, before the passage of the ordinance above referred to, she erected a tight board fence across each end of such street, thus effectually closing all entrance into it from either Third street or Livingston avenue. Such a method of revocation is one frequently adopted. It was a plain notice to the city of her intent to revoke, and is an effective method in all cases where the right to revoke still remains in the donor.

It is claimed by the respondent's counsel that the strip of land in question has become a street by force of the provisions of Laws 1891, c. 286, § 31. Such act is to the effect that all streets, etc., in the city which have been thrown open to public use, and have been or may be "used as such for five years continuously, shall be deemed and taken to be public streets, etc., provided the common council shall by a two-thirds vote of all its members, accept such streets." This street had undoubtedly been thrown open to public use, but had it been "used as a street," within the meaning of that section? In defining similar words used in the General Statutes (1 Rev. St. p. 521, § 100), it is held in Speir v. Town of New Utrecht, 121 N. Y. 420, 24 N. E. 692, that such user "must be like that of highways generally. The road must not only be traveled upon, but kept in repair or taken in charge of or adopted by the public authorities. And so the fact that a portion of the public have traveled over it more than twenty years does not, alone, make it a highway." I am of the opinion that a similar meaning should be given to the

words used in this statute. Moreover, the user must be for five years "continuously." It may well be that dedication would be inferred from the fact that the street had for five years been thrown open to public use, but the right to revoke always exists until accepted; and it is clear from this statute that no acceptance exists until the common council, by a two-thirds vote, so declares. It is not to be supposed that the intent of the statute was to deprive the donor of his common-law right to revoke a dedication before acceptance. That would be equivalent to creating a prescription after 5 instead of 20 years' user. The acceptance under the statute must, I think, be had before the street has been withdrawn from public use. And in the case before us, as we have seen above, the action of the common council was not taken until after such withdrawal. I reach the conclusion that the land in question has never become a public street of the city of Albany. It is still the private property of this petitioner.

It seems to be conceded on the part of the city that, unless the strip of land in question had become one of its streets, the laying of the sewer through the same was unauthorized, and the assessment complained of was also unwarranted.

It results, therefore, that the order appealed from should be reversed, and the assessment vacated, with costs to the petitioner of this appeal, and in the court below. All concur, except HERRICK, J., not acting.