(73 Misc. Rep. 380.)

### In re STARR STREET IN BOROUGH OF QUEENS.

(Supreme Court, Special Term, Kings County.   August 17, 1911.)

1. MUNICIPAL CORPORATIONS (§ 437*)—ASSESSMENT OF BENEFITS—EFFECT OF EXEMPTIONS.

    Greater New York Charter (Laws 1901, c. 466) § 980, authorizes the board of estimate and apportionment to determine how much of the cost of a local improvement shall be borne by the city, and requires the rest to be assessed on benefited property. Section 1003 requires all moneys paid for the improvement, except the city's share, to be assessed proportionately as far as practicable upon the lands benefited. Laws 1879, c. 310, exempt cemetery property from assessments for local improvements. Held, that the Legislature had power to, and the statutes did, authorize the board of estimate and apportionment to assess the total cost of local improvements on land benefited, though cemetery land was exempted, so as to very largely increase the assessments on the other land; the assessments thereon not exceeding one-half the value of the land.

    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1051; Dec. Dig. § 437.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. MUNICIPAL CORPORATIONS (§ 437*)—SPECIAL ASSESSMENTS—BASIS—BENE-
FITS.

The Constitution requires that the burden of local assessments shall be
distributed according to benefits.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §
1051; Dec. Dig. § 437.*]

3. MUNICIPAL CORPORATIONS (§ 407*)—LOCAL IMPROVEMENTS—ASSESSMENTS—
EXEMPTIONS—CEMETERIES.

The statutes exempting cemeteries from assessments for local improve-
ments are valid.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. §
407.*]

4. COURTS (§ 91*)—RULES OF DECISION.

The Special Term should follow every rule laid down by the Appellate
Division of the same department.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 325–326; Dec.
Dig. § 91.*]

5. MUNICIPAL CORPORATIONS (§ 506*)—ASSESSMENT OF BENEFITS—REVIEW—
POWER OF COURT.

When a quasi legislative act of the commissioners in assessing damages
and benefits is not effective until confirmed by the court, the court may
refuse to confirm an assessment for benefits if it plainly violates legal
rights or inherent principles of justice; but where the court cannot say
that the benefit of local improvements plainly did not extend to the area
covered by the assessments, as fixed by the commissioners, and including
property which could not possibly be benefited, its determination of the
assessment area is conclusive.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. §
506.*]

6. MUNICIPAL CORPORATIONS (§ 439*)—ASSESSMENT OF BENEFITS—MEASURE.

The benefit to land not taken in running a street diagonally through
lots is the difference between the value of the gores with and without the
improvements.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. §
439.*]

7. EMINENT DOMAIN (§ 131*)—PUBLIC IMPROVEMENTS—BENEFITS.

For the purpose of assessing damages from public improvements, the
land should be valued in view of every possible use to which it may be
put.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 353;
Dec. Dig. § 131.*]

8. EVIDENCE (§ 571*)—ASSESSMENTS OF BENEFITS—EXPERT OPINIONS—WEIGHT.

Neither the reviewing court nor the commissioner is bound to accept
absolutely the opinions of experts on the value of land assessed for dam-
ages and benefits.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2398; Dec. Dig.
§ 571.*]

9. MUNICIPAL CORPORATIONS (§ 466*)—PUBLIC IMPROVEMENTS.

It cannot be shown that the commissioners have failed to perform their
duty of determining the area of assessment for street opening improve-
ments, and proportionately distributing the assessment upon the property
within such area by showing the amount of benefit to the separate par-
cels, or whether all the property in the area is actually benefited; Great-
er New York Charter (Laws 1901, c. 466) § 980, requiring the board of esti-
mate and apportionment to determine the part of the cost of local im-
provements which shall be borne by the city, and that the remainder
be assessed on the benefited property.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. §
466.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

10. MUNICIPAL CORPORATIONS (§ 467*)—EMINENT DOMAIN (§ 147*)—PUBLIC IMPROVEMENTS—BENEFITS—LEASEHOLDS.

The value of a leasehold for the purpose of awarding damages and benefits from public improvements is the excess of the rental value over the rent reserved for the unexpired term, together with the value of any fixtures which the tenant may remove.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 467;* Eminent Domain, Cent. Dig. §§ 394–396; Dec. Dig. § 147.*]

11. FIXTURES (§ 14*)—RIGHTS OF TENANT.

A tenant does not own fixtures, but only the right to remove them under certain conditions.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. § 22; Dec. Dig. § 14.*]

12. FIXTURES (§ 33*)—REMOVAL—WAIVER OF RIGHT.

A tenant's right to remove fixtures is waived by failure to do so before the stipulated expiration of the lease.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 64, 65; Dec. Dig. § 33.*]

13. FIXTURES (§ 33*)—REMOVAL—WAIVER OF RIGHT.

A renewal of a lease without reserving the tenant's right to remove fixtures extinguishes the right.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 64, 65; Dec. Dig. § 33.*]

14. EMINENT DOMAIN (§ 138*)—PUBLIC IMPROVEMENTS—DAMAGES.

The owners of buildings cut through by a newly opened street were entitled to damages for the injury to the buildings.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 370; Dec. Dig. § 138.*]

15. DEDICATION (§ 31*)—ACCEPTANCE—NECESSITY.

Dedication of a public highway must be accepted in order to make its dedication as such complete.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 64, 65; Dec. Dig. § 31.*]

16. DEDICATION (§§ 35, 37*)—ACCEPTANCE—MODE.

An acceptance of a public highway by the public may be either by the affirmative action of public authorities empowered to accept a dedication, or by common public user.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 68–71, 73–74; Dec. Dig. §§ 35, 37.*]

17. DEDICATION (§ 37*)—ACCEPTANCE—PUBLIC HIGHWAYS.

While the sale of lots by reference to a map showing a street will raise a private easement in such street in favor of abutting owners, the use thereof pursuant to such easement is not such a public user as to constitute an acceptance of the street as a public highway, nor will mere user of the street by the public without its repair and maintenance by public authorities constitute such acceptance.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 73–74; Dec. Dig. § 37.*]

18. DEDICATION (§ 37*)—ACCEPTANCE AND USER BY PUBLIC.

A general user by the public at large of a street, together with its repair and use or maintenance by public officers, constitutes its acceptance as a public highway by public user.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 73–74; Dec. Dig. § 37.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

19. DEDICATION (§ 44*)—ACCEPTANCE—SUFFICIENCY OF EVIDENCE.

Evidence *held* not to justify a finding that a street was accepted as a dedicated public highway.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 85–87; Dec. Dig. § 44.*]

20. MUNICIPAL CORPORATIONS (§ 503*)—PUBLIC IMPROVEMENTS—AMOUNT OF DAMAGES—REVIEW.

The opinion of the commissioners as to the amount of damages sustained by public improvements will not be reviewed by the court, unless based upon an incorrect principle, or there has been error to the owner's prejudice in rulings on evidence.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 503.*]

21. MUNICIPAL CORPORATIONS (§ 503*)—PUBLIC IMPROVEMENTS—REVIEW—EVIDENCE.

In reviewing the report of commissioners as to damages and benefits resulting from public improvements, the court should not consider the case as if all of the evidence were before it; the view being direct evidence of value.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 503.*]

In the Matter of Starr Street in the Borough of Queens. On motion to confirm the report of commissioners assessing benefits and damages. Report confirmed except as stated, as to which it is referred for correction.

Archibald R. Watson, Corp. Counsel (Joel J. Squier and Joseph J. Myers, of counsel), for the motion.

Hugo Hirsh (Thomas W. Henry, of counsel), for certain claimants, opposed.

Joseph A. Flannery (Joseph A. Flannery and Benjamin Trapnell, of counsel), for Anna Schleider, opposed.

William R. Keese, for Katherine Eppig, executrix, etc., opposed.

John R. McMullen, for Joseph Hemmer and others, opposed.

Lewis S. Marx and Saul H. Immergluck, for Congregational Ahawath, etc., opposed.

Dutton & Kilsheimer, for Wilson Marshall, opposed.

BLACKMAR, J. Objection is made to the confirmation of the report as to the assessment for benefits on the ground that the exemption therefrom of the cemeteries, under chapter 310 of the Laws of 1879, as construed in Matter of the City of New York, 192 N. Y. 459, 85 N. E. 755, operates illegally to cast an undue burden on the other property within the area of assessment as fixed by the commissioners. The fact that such exemption does increase the assessments on other property is not disputed, and is obvious. The amount of cemetery land within the area of assessment is so large that this result is not only obvious, but startling. For instance, the owners of benefit parcel lot No. 71, map 50, contributed all the land for the street in front, except a strip about a foot in width. For this land they were awarded, damage parcel No. 38, $6,383.75, and they were assessed for benefits $14,-448.56. The expenses of the proceeding were about 15 per cent. of

the awards, and the practical result is that these owners furnished the money to pay for their own land, for the strip of land taken which belonged to the cemetery, for their share of the cost of the proceeding, and nearly $7,000 more to pay for land taken from the cemeteries for portions of the street not abutting on their premises. It is claimed by the city that this result follows necessarily from the operation of three statutes. First. Section 980 of the charter (Laws 1901, c. 466), which authorizes the board of estimate and apportionment to determine how much, if any, of the cost of the improvement shall be borne by the city, and directing that the rest be assessed on property benefited thereby. Second. Section 1003 of the charter, which provides that all moneys paid for the improvement, except the share borne by the city, shall be assessed equally and proportionately, as far as practicable, upon the lands benefited. Third. Chapter 310 of the Laws of 1879, exempting cemetery property from assessment for local improvements.

[1] It is claimed by the city that as the board of estimate and apportionment has resolved that the total cost of the improvement shall be assessed on the property benefited, and as the commissioners have reported that the cost was assessed on the land benefited in proportion to the benefits, but not in excess thereof, and as the assessments have in no case exceeded one-half the value of the land, and distribution of assessments made by the commissioners was in strict conformity to statutory requirements, that no right guaranteed by the Constitution has been violated.

[2] The property owners claim that the fundamental principle that the burden shall be distributed according to benefits, which is now secured by constitutional enactment (Matter of the City of New York, 190 N. Y. 350, 83 N. E. 299, 16 L. R. A. [N. S.] 335; Norwood v. Baker, 172 U. S. 269, 19 Sup. Ct. 187, 43 L. Ed. 443; County of Monroe v. City of Rochester, 154 N. Y. 570, 49 N. E. 139), and which is codified in section 1003 of the charter, has been violated. An assessment for local improvements, although deriving its authority from the taxing power, rests upon a different basis from a general tax. The former is practically an appropriation of the unearned increment caused by the improvement to the cost of the improvement. The basis of the assessment is benefits, and can be nothing else without exceeding the constitutional limitations to legislative power. Norwood v. Baker, 172 U. S. 269, 19 Sup. Ct. 187, 43 L. Ed. 443. The requirement that it shall be proportioned to benefits as far as practicable is now found in the fundamental law (Matter of City of New York, 190 N. Y. 350, 83 N. E. 299, 16 L. R. A. [N. S.] 335); and, even if it were not, this principle, founded in justice and codified in section 1003 of the charter, must be the guide in statutory construction. But the owners plausibly claim that their benefit parcels have not been assessed according to benefits, for to their assessments have been added the proportion which would otherwise have fallen on the cemeteries. The Legislature has, in the interest of the public at large, exempted these cemeteries from assessment for local improvements.

[3] The validity of these exemptions cannot now be questioned.

Matter of City of New York, 192 N. Y. 459, 85 N. E. 755. The question now is whether the Legislature did, and whether it was competent for it to, compel the other property owners within the area of assessment to bear the burden taken from the shoulders of the cemeteries. It is true that in matters of general taxation an exemption increases the burden on other property in the taxing district; but the question is whether this rule applies to an assessment district composed of property benefited by a public improvement.

These are interesting questions, but I do not propose to attempt their solution. The Appellate Division of the First Department has taken the heart out of the question. Matter of Mayor (Perry Avenue) 118 App. Div. 874, 103 N. Y. Supp. 1069.

[4] I think it the duty of this court at Special Term to recognize and follow every rule laid down by the appellate tribunal. In this way only can the integrity and uniformity of the law be maintained; and this result is more important than the interests involved in any single case. I see the force of the suggestion of the counsel for the objectors that the circumstances under which the decision was made rob it of much of its authority. But for this court that decision is law. If it is to be departed from, it should be by a court of concurrent or superior jurisdiction. In re Wendover Avenue, 20 N. Y. Supp. 563,[1] and Matter of Brook Avenue, 8 App. Div. 294, 40 N. Y. Supp. 949, are also authorities for the rule laid down in the Perry Avenue Case. The law that property shall not be assessed in excess of half its value is a partial exemption. In both these cases the court held that, where the assessment on certain property exceeded half its value, such excess should be assessed against other property.

The second question raised is as to the area of assessment. The delimiting of a tax district and the classification of property for the purposes of taxation are legislative functions. Presumably they are not subject to judicial review except to determine whether they exceed constitutional limitations to legislative power.

[5] But, when the quasi legislative act of the commissioners is not effective until confirmed by the court, I think that the court has power to withhold confirmation if such act appears plainly violative of legal rights or inherent principles of justice. I cannot say that the benefit of this improvement did not extend to the area of assessment as fixed by the commissioners. So long as the extent of the area of benefit is open to debate or question, the determination of the commissioners is conclusive. If it plainly appeared that there was included in the area property which could not by any possibility be benefited, it would be within the power and duty of the court to refuse confirmation; but that is not the case here.

Certain owners object to the assessment asserting that, although their property is within the area of assessment, it was not benefited by the improvement. Their claim is due to the fact that the improvement has cut diagonally through certain lots, which already had a frontage on Metropolitan avenue, leaving gores of little value, but

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 65 Hun, 625.

which have nevertheless been assessed for benefits. This claim is not well founded. The award was for the value of the portions of the land taken and consequential damages to the remainder. They are therefore compensated in the award for all damages, and the question of the benefit of the improvement is a distinct and separate inquiry.

[6] The benefit is the difference between the value of these gores with and without the improvement. The objectors, when they assert that they have not been benefited, confuse the damage with the benefit. The land left has suffered damage from being lopped off from the part taken. This may even be much greater than the benefit conferred by the new street frontage. But the damages and benefits have not been set off one against the other leaving a result of no benefit. The damages have been awarded and the benefits assessed separately.

I am not disposed to interfere with the awards to the cemeteries. I do not think that any improper element of damage has been considered, and I am also left with the impression that they have been awarded all that they are entitled to.

[7] It is true that land should be valued in view of every possible use to which it can be put. But the amount for which separate graves may be sold, multiplied in to the area of a cemetery, is not necessarily the market value of the cemetery land. Such separate graves can only be marketed gradually, and as the death rate among those who would naturally be interred there determines. Neither is the avails of the lots and graves sold all profit by any means. I think that the award shows that due consideration was given to all the proper elements of damage.

[8] I do not assent to the doctrine that the court is bound to accept the opinions of experts on value as though such opinions were the only evidence in the case. Reporting the testimony to the court gives the court valuable aid in reviewing the findings of value; but we must remember that the view is of great weight as direct evidence of value, and this evidence is not before the court.

I have read with interest the brief by the owner of benefit parcel No. 48; but I cannot sustain his contention. The question of the amount of the assessment which each lot owner shall bear is not a separate question to be determined by the commissioners as between the owner and the city. The commissioners determine the amount of each separate assessment as a step in carrying out the duty imposed on them of distributing the whole of the cost of the improvement equally and proportionately on the property benefited. The assessment as a whole is not made by the commissioners. It is the result of the statute, which imposes the cost of the improvement on the property benefited, unless the board of estimate and apportionment casts part of the burden on the city. All the power lodged in the commissioners was to determine the area of assessment, and to distribute the assessment equally and proportionately upon the property within the area of assessment. It cannot be shown that they have erred in the performance of their duty by offering evidence as to the amount of benefit of separate parcels, or whether all the property in the area is actually benefited. It has not been shown that the area is unlawfully fixed, nor

that parcel No. 48 has been saddled with more than its proportionate share, and therefore no error on the part of the commissioners in assessing this parcel has been shown.

[9] As the power is granted the board of estimate and apportionment to assess the whole cost on the property benefited, that board is necessarily vested with the power to determine that local benefits equal the cost. This determination cannot be overruled by the commissioners. They may determine the relative amount of the benefits on different parcels. Having done this, they are to distribute the assessment accordingly, and are without power to determine that the assessment exceeds the benefit. If it exceeds as to one parcel and the proper proportion of benefit has been determined, it would necessarily follow that the assessments as a whole exceed the benefit as a whole. This the commissioners cannot determine, for it already has been determined by the board of estimate and apportionment that the benefits are great enough to bear the assessments. It may be that it is a judicial question whether the assessments so plainly exceed the benefits that private property is taken without compensation; but neither the evidence offered and received nor that offered and excluded is sufficient to raise that question. A consideration of the character of the improvement and the relation of the land to it determines whether it receives the benefit; and I doubt if opinion evidence as to whether any particular parcel is benefited is competent.

[10] I cannot find any error harmful to the claimant of damage parcel 40a. The value of a leasehold is the excess of the rental value over the rent reserved for the unexpired term of the lease. To this may be added the value of any fixture which the tenant has the right to remove. This tenant was in possession for an indefinite term, and I find no competent evidence of the diminution of rental value by reason of this improvement during the unexpired term of any lease. If a pure question of law were to be decided, it might be doubtful whether the tenant owned the building.

[11-13] Strictly speaking, a tenant does not own either building or fixtures. They are part of the land. What the tenant owns is the right to remove them, and this right is lost by failure to remove them before the stipulated expiration of the lease. A renewal of the lease without reserving the right to remove fixtures extinguishes that right. Equally when the term ends the right is terminated. In this case, however, the landlord conceded the right of the tenant to the award for damages to the building. He cannot complain that the commissioners have awarded it to him. The amount of the damages is a question of opinion only, and the court will not substitute its opinion for that of the commissioners.

The line of Starr street, as opened by these proceedings, cuts through the front of two dwelling houses. The owners have been allowed nothing for damages to such buildings. The preliminary report stated the damages to the land and improvements of damage parcel No. 23 at $1,401, and the final report at $1. The preliminary report stated the damages to the land and improvements of damage parcel No. 19 at $1,301, and the final report at $1. Intermediate the

time of the preliminary and final reports, much testimony was taken by the commissioners on the question as to whether or not Starr street was a public highway before it was opened in these proceedings. The corporation counsel contended that it had been dedicated as a public highway by the owners by virtue of sales of lots fronting on Starr street, as the same was laid down on a map filed by Martin Zeidler on November 19, 1889, in the county clerk's office in Jamaica, and that the projections of the buildings beyond the street line was an encroachment on a public highway. The commissioners obviously took this view, for they awarded $1 only in their final report in each case, whereas the estimated damage, according to their preliminary report, was in the case of parcel No. 23 $1,401, and in the case of parcel No. 19 $1,301. If Starr street was a public highway and the portions of the buildings standing on such damage parcels were encroachments thereon, the contention of the corporation counsel was probably correct.

[14] If it was not a public highway, the award of the commissioners was wrong because they omitted to award to the owners damages for taking portions of the buildings.

[15] A public highway may be created by dedication by the owners to the public use and the acceptance thereof by the public. The dedication alone is not enough. This in itself is a mere offer of the locus in quo for a public highway. It does not become a highway until it is accepted by the proper authorities. The facts shown by the evidence were sufficient to establish a dedication of Starr street as a public highway long before these proceedings were begun; but I cannot find any evidence sufficient to establish an acceptance thereof by the public.

[16] An acceptance may be accomplished in either one of two ways: First, by the affirmative action of the public authorities empowered by statute to accept a dedication; or, second, by common or public user. There is no evidence in this case of any official act by the authorities competent to accept this highway, either of the town of Newtown before the creation of the city of Greater New York, or of the city of New York subsequent thereto, and I think the record equally barren of evidence sufficient to establish a user.

[17] The sale of lots by reference to the map referred to undoubtedly created private easements in favor of the abutting owners upon the strip of land called Starr street. The user of such private easements, however, is not a public user sufficient to operate as an acceptance of the dedication. Neither does mere travel by the public, without action by the authorities in repairing and maintaining or using it, constitute an acceptance of such road. People v. Underhill, 144 N. Y. 316, 39 N. E. 333; Smith v. Smythe, 197 N. Y. 457, 90 N. E. 1121. It may be that an acceptance of the dedication of the highway by user may be shown by proof of facts which fall short of the requirements of section 209 of the highway law (Consol. Laws 1909, c. 25).

[18] I think that a general user by the public at large of any street as a highway, accompanied by official acts of the municipality in repairing, using, or maintaining it, constitutes an acceptance by com-

mon or public user. There is no sufficient evidence in this case of public user to establish an acceptance of the dedication of Starr street, as laid down on the map of 1889, as a public highway. The evidence that police officers patroled the street is no evidence that it was a public highway, for such officers might well in the performance of their duties patrol a private street. The fact that it was not assessed is evidence that the private easements destroyed the value of the fee, and the principle is often applied in proceedings such as this that the fee of land in a street burdened by private easements has no market value. The attempt to prove that work was done by the bureau of highways seems to have failed. Neither the police department, the tax department, nor the bureau of highways has power to accept a dedication. Evidence of their acts is only competent as bearing on the issue of public user.

[19] I think, therefore, that the commissioners erred in holding that the evidence justified a finding of an acceptance of the dedication of Starr street as a public highway. It follows that the commissioners were in error in failing to award to the claimants damages for that portion of their buildings standing on damage parcels 19 and 23.

The question of damages caused by the regulation of the street is something peculiarly within the province of the commissioners. I cannot find that they have omitted any element of damages which they should have included in making their award.

[20, 21] According to the general principles, which have always governed the action of the court in passing upon the action of commissioners in condemnation proceedings, the opinion of the commissioners as to the amount of the damages will not be reviewed by the court unless they have proceeded upon a wrong principle, or have erred to the prejudice of the owner in admitting or excluding evidence. I do not understand that Matter of City of New York (Titus Street) 139 App. Div. 238, 123 N. Y. Supp. 1018, abandons this doctrine. The circumstances of that case were peculiar. It appears by a reading of the prevailing, but not dissenting, opinion that there was evidence of a change of values in the location since the last view of the commissioners, and before the award was made, which was not considered by the commissioners. Neither do I think that it is the effect of this decision, nor of the decisions reported in 66, 67, and 68 Miscellaneous Reports, that the commissioners were bound to accept expert testimony as to values; nor should the court in passing upon their report review the case as if the evidence were all before it, for the view is direct evidence of value, and that is not certified to the court by the commissioners. I shall not, therefore, interfere with the award of the commissioners as to parcels 23a and 19a.

My conclusion is that the awards of damages should be confirmed as to all parcels, except damage parcels 19 and 23. As to these parcels, the report should be referred back to the same commissioners for revision and correction. As a change in the awards will affect the amount of the assessments, the report as to the assessments for benefits is not confirmed, but is referred back to the commissioners for such revision and correction as the change in the awards for damage parcels Nos. 19 and 23 may render necessary.