JULIA KELLEY, Respondent, *v.* THE CITY OF TROY, Appellant.

Third Department, July 1, 1925.

**Municipal corporations — action to recover for injuries suffered when plaintiff, while stepping over wooden curbing caught heel of shoe in projecting peg and fell — only use of street was means of access to few houses thereon — evidence does not show dedication and acceptance — if place where accident occurred was public street defendant is not liable in absence of actual or constructive notice.**

In an action to recover damages for injuries suffered by the plaintiff who, while stepping over a wooden curbing between an alleged street and the space used for sidewalk purposes, caught her heel in a projecting peg which was used to support the curbing, and fell, it must be held that the place where the accident happened was not a public street, since it appears that the street was used only for the purpose of access to a few houses thereon and was not used by the public generally; that it connected with a public street on one end only and that the only evidence of dedication and acceptance thereof was certain maps upon which the street was denoted, the collection of taxes, the extension of water pipes, and that the commissioner of public works had constructed a wooden culvert across the street for the purpose of diverting water from it.

Furthermore, if it could be held that the place in question was a public street, the defendant would not be liable, since there is no evidence that it was actually notified of the existence of the condition causing the accident or that that condition had existed for such a length of time as to constitute constructive notice to the city.

APPEAL by the defendant, The City of Troy, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Rensselaer on the 9th day of December, 1924, upon the verdict of a jury for $3,500, and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes.

There is in the city of Troy a strip of land about five hundred feet long and twenty-eight feet wide, commonly known as Cliff street. It extends in an easterly and westerly direction. Its easterly outlet is Stowe avenue. There is no westerly outlet. Theoretically a street known as Elm street enters Cliff street but practically the conditions are such that a vehicle cannot be driven from either street into the other. There are houses at intervals on both sides of Cliff street. There is quite an abrupt decline from Stowe avenue westerly and the ground also slopes from the south to the north side of the street. On the northerly side of the street for a distance of about fifty feet there was what is called a plank curbing consisting of planks placed on edge and held in position by wooden pegs on either side driven into the ground. This so-called curbing was about five feet from the fence of the adjoining landowner and the intervening space is spoken of as a sidewalk. The curbing, however, had no relation to this sidewalk which consisted of the undisturbed and natural surface of the ground. The plank projected above the ground on either side about seven inches. The purpose of it as explained by the adjoining owner was to prevent surface water from flowing over his premises. The pegs which held the planking in position were driven down so that the ops thereof were flush with the top of the planking except that one peg at the westerly extremity of the planking projected one inch above the top of it. On a dark and rainy evening the plaintiff had been making a call in a house on the southerly side of the street. On leaving the house she crossed to the northerly side of the street in search of a better place to walk. She saw the planks as she approached them and with her right foot surmounted the same without difficulty but the heel of her left shoe was caught by the projecting peg and she was thrown to the ground and injured. She has recovered a judgment herein because of the negligence of the city. Further facts are hereafter stated.

32

Third Department, July, 1925. [Vol. 213

*Frederick C. Filley, Corporation Counsel,* for the appellant.

*Mackrell & Ranney* [*Charles J. Ranney* of counsel], for the respondent.

COCHRANE, P. J.:

The first difficulty which confronts the plaintiff is the burden of establishing that the place of the accident was a public thoroughfare of the city. In *Fountaine* v. *Fuld & Hatch Knitting Co.* (207 App. Div. 542) some of the authorities bearing on this question were collated by Mr. Justice HINMAN. He quoted from the leading case of *Speir* v. *Town of New Utrecht* (121 N. Y. 420, 429) as follows: " All we have here is that ' the road was used by the public generally.' But the mere fact that a portion of the public travel over a road for twenty years cannot make it a highway; and the burden of making highways and sustaining bridges cannot be imposed upon the public in that way. There must be more. The user must be like that of highways generally. The road must not only be traveled upon, but it must be kept in repair or taken in charge and adopted by the public authorities." In *Smith* v. *Smythe* (197 N. Y. 457, 461) it was said: " Mere travel by the public upon the roads, without action by the public authorities in repairing or maintaining them, is insufficient. [Citing authorities.] In *People* v. *Underhill* [144 N. Y. 316], which was a case of dedication, it was held that the mere fact ' that a portion of the public had traveled over the road for twenty years would not make it a highway; that the user must be like that of highways in general, and the road must not only be traveled upon, but it must be kept in repair, taken in charge and adopted by the public authorities.' " In the present case we do not even have the circumstance that " the road was used by the public generally." From what has been stated it is apparent that Cliff street could not be used by the public generally. Its only use was as a means of access to houses abutting the street. In *Holdane* v. *Trustees of the Village of Cold Spring* (21 N. Y. 474), it was questioned whether an avenue which like Cliff street was a *cul-de-sac* was capable of being made a highway by dedication or otherwise. We need not in this case attempt to answer that question but that circumstance is one which should be considered in connection with other circumstances. The trial justice assumed that there had been a dedication of this street and permitted the jury to infer that the city had accepted such dedication. There is no evidence of any dedication unless it may be inferred from the long-continued existence of the street. No effort was made to trace the history of the street except that it appears that the locality in which it exists was formerly ·part

of an adjoining town and a number of years ago was annexed to the city. The facts which the jury were permitted to consider as bearing on the question of an acceptance of the dedication were fully and clearly stated by the trial justice in his instructions to them as follows: " The city has made some maps which have been introduced in evidence upon which Cliff street has been denoted. There is certainly some sort of an opening there, houses on each side of the street and lots. It is clearly within the boundaries of the city. The city collects taxes there. They assess the property. They collect water rents. There is some kind of a service pipe. Different city officials have been down there at different times. It has been detailed to you what they have done. The Commissioner of Public Works before this accident went down there and built some sort or reconstructed some sort of a conduit that laid across the street." The foregoing summary of facts constitutes all the facts bearing on the question of acceptance except the wholly trivial and unimportant circumstance that an employee of the city on one occasion while removing weeds from the streets in general cut some weeds on the street in question, assuming of course that it was a city thoroughfare and without any knowledge on the subject and without any directions or instructions in regard to this particular street. In *People* v. *Underhill* (144 N. Y. 316, 325) it was said by PECKHAM, J., in considering whether Lafayette avenue in the village of Sing Sing was a public street: " It is claimed that a map of the street was made and filed. That mere fact is wholly immaterial. * * * The mere assessment by assessing officers of lands which they described as being on Lafayette avenue is no evidence whatever of a proper acceptance, nor, under the circumstances, was the putting up of signs at each end of the street naming it Lafayette avenue." Property owners must pay taxes whether they reside on a public or private street. The location of a service water pipe is without significance. That existed for the benefit of the individuals residing on the street. The public generally derived no benefit therefrom. It is common knowledge that water pipes and gas pipes frequently cross the lands of individuals. More significant is it that in the year 1921 the commissioner of public works constructed a wooden culvert across the street and in 1922 put some dirt around the same. The significance of this circumstance, however, is somewhat minimized by his explanation of the reason therefor. It was to divert the surface water which flowed into Cliff street from Stowe avenue. I do not think a single instance of that kind under the circumstances here disclosed is sufficient evidence on which to predicate a finding of a dedication of this

street and an acceptance thereof by the city. The primary purpose of a street is a place for public travel. There is absolutely no evidence that the city ever did anything with a view to making the street more serviceable for travel. The circumstances negative such a purpose. There was no travel except by those going to or from the few houses on the street. The conditions as shown by the photographs and as detailed in the evidence were extremely crude. There was no paving or grading or lighting or sidewalk construction. Everything seems to have been as formed by nature except the abnormal wooden curbing above described and except also that the wooden curbing was continued for a certain distance by a stone curbing which seems to have answered the same purpose and fulfilled no other function than the wooden curbing. We may not even say from this record where the side lines of the street are. For anything that appears the curbing may have been on private property even though Cliff street were a city street. But for the reasons stated there is no evidence that any part of the street was owned or controlled by the city. Clearly in an action by the city to establish its claim of ownership to this street as against individual claimants it could not succeed on the evidence here presented.

It is also my opinion that if the defendant was responsible for the condition of Cliff street the condition which caused the injury to plaintiff is not shown to have existed for such a period of time that the same should have been discovered and remedied by the city in the exercise of reasonable care and diligence. The general condition of the curbing it is true had existed for many years. But the owner of the property bought it about two years before the accident. He testified that he had in the meantime kept the curbing in repair. How long the offending peg had been a menace does not appear. The curbing itself was harmless. Plaintiff saw it and had no difficulty in stepping over it. It was the peg which caused the injury. Whether it had been there two days or two years we do not know. It was incumbent on the plaintiff to show that it had been there for such a length of time as to charge the defendant with knowledge thereof.

The judgment and order should be reversed on the law and facts and a new trial granted, with costs to the appellant to abide the event.

All concur.

Judgment and order reversed on the law and the facts and new trial granted, with costs to the appellant to abide the event.