Carroll M. Roberts, J.
By deed dated September 1, 1954 petitioner acquired title to several lots in the Marks Tract in the town of Irondequoit. Among them was lot 35, the lot here in question which, according to a map of said tract, fronts on the easterly side of a street designated as Walnut Park. Petitioner applied to respondent for a building permit pertaining to said lot, and on April 23, 1958 the permit was refused by the building inspector “ until such time as the Town Board of the Town of Irondequoit certifies to me that arrangements have been made for improvements in ‘ Walnut Park ’
*611 Petitioner claims that Walnut Park has been dedicated as a public highway in the town of Irondequoit and hence he is entitled to a building permit merely because of the fact of 'such dedication. Respondent claims that the portion of this street upon which petitioner’s lot fronts, has not been so dedicated and, even if dedicated, that the building permit was properly refused because this portion of the highway has not been suitably improved to the satisfaction of the Town Board or the planning board as required by section 280-a of the Town Law.
A map of the Marks Tract showing a street designated as Walnut Park was filed in the office of the County Clerk of Monroe County on March 11, 1926, indorsed upon which map is the approval of the town clerk of the Town of Irondequoit. An amended map showing a change in the building line was filed March 15, 1927. These maps were apparently filed pursuant to section 334 of the Real Property Law and such filing did not of itself constitute a dedication of a highway shown thereon. (Matter of City of New York [E. 177th St.], 239 N. Y. 119.) Thereafter, by deed dated August 14, 1937 and recorded in Monroe County Clerk’s office January 23, 1938, the owners of the tract deeded to the Town of Irondequoit the fee of the street designated on said map as Walnut Park. Not only did the town accept said deed but thereafter and on February 3, 1938 the Town Board adopted a resolution consenting that the town superintendent lay out Walnut Park as a public highway. However, on February 5, 1938, the town superintendent wrote the Town Board advising that the dedication was not in the public interest, and it appears that he never signed an order which had been prepared for him, laying out said street as a public highway.
Between 1925 and 1952 a number of building permits were issued and houses erected on a portion of Walnut Park lying to the north of lot 35 and between it and Ridge Road. It further appears from the affidavit of the town superintendent of highways that the portion of Walnut Park north of the north lines of lots 13 and 34, which would be 50 feet north of lot 35, has been used as a public highway and maintained, repaired and controlled by the town, but that no portion of the highway lying south of this point and in front of lot 35 has at any time been used as a public highway or maintained, repaired or controlled by the town. An affidavit of petitioner’s attorney states that the street is opened and maintained for a distance of approximately 625 feet southerly from Ridge Road, which would bring the improved portion of the highway only to the northerly line of lot 35. It is apparently undisputed that the highway *612 has not been opened or improved in front of lot 35 or southerly therefrom.
To' constitute a dedication there must not only be an offer and acceptance but there must be a formal opening of the street by the public authorities or a user. (Matter of City of New York [E. 177th St.], 239 N. Y. 119, 128, supra; People v. Underhill, 144 N. Y. 316; Niagara Falls Suspension Bridge Co. v. Bachman, 66 N. Y. 261.) The fact that a portion of the street may have been used by the public does not operate as a dedication of the entire street. (People v. Underhill, 144 N. Y. 316, supra.) Although the town, by the acceptance of the deed, obtained a fee of the entire street, the fact that it may have delayed opening the same did not deprive it of title nor of its right to open the same for the public at a later time. (New York Cent. & Hudson Riv. R. R. Co. v. City of Buffalo, 200 N. Y. 113, 120.) There has been no order by the town superintendent laying out the highway (Highway Law, § 171), nor has the town opened, laid out, improved or maintained that portion of the street in front of lot 35 and extending southerly therefrom. There is no indication that this portion of the street has ever been used by the public. Lot 35 was assessed as fronting on Walnut Park but this was no evidence of any prior dedication. (People v. Underhill, 144 N. Y. 316, 325, supra.) It would seem, therefore, that the southerly portion of the street has not become as yet a public highway by dedication.
The issuance of a building permit is governed by section 280-a of the Town Law. Whether or not such a permit shall be issued is not in any way made dependent upon the fact that access to the proposed structure be by a dedicated highway. The statute prescribes two factors which determine the right to issue such a building permit. Under subdivision 1 of said section there must be a street or highway of the character specified in the section giving access to the proposed building, and under subdivision 2 it is provided that no permit shall be issued unless such street or highway shall have been suitably improved to the satisfaction of the Town Board or the planning board.
Where the enforcement of the provisions of section 280-a results in practical difficulty or unnecessary hardship, the property owner may appeal to the Board of Appeals, which board is empowered to grant reasonable exceptions and the decision of the board is subject to review by certiorari. (Town Law, § 280-a, subd. 3.) The petitioner here did not elect to pursue the remedy so afforded to him. He chose rather to bring this proceeding in the nature of a mandamus to compel the issuance *613 of the permit. The sole question here for determination is, therefore, did his proposed structure qualify for a building permit under section 280-a?
Petitioner’s structure qualifies for a building permit under paragraph (c) of subdivision 1 of section 280-a because the lot is located on a street shown on ¡a plat which was filed and recorded in the office of the County Clerk prior to the appointment of the planning board and the grant to such board of the power to approve plats. The map of the subdivision showing Walnut Park was filed in Monroe County Clerk’s office March 11, 1926. The grant to a planning board of the power to approve plats first became part of the Town Law by chapter 175 of the Laws of 1927 and then constituted section 149-m of the Town Law. As lot 35 fronts 50 feet on Walnut Park as shown on said map, there is access to the lot within the meaning of subdivision 1 of section 280-a (see § 280-a, subd. 5 as added by L. 1958, ch. 334). Inasmuch as there is access to petitioner’s lot by means of a street which qualifies it for a building permit under subdivision 1, it is immaterial whether or not the portion of the street on which the lot fronts has been dedicated.
The basis for the rejection of the building permit was subdivision 2 of section 280-a. This subdivision provides in part as follows: ‘ ‘ Before such permit shall be issued such street or highway shall have been suitably improved to the satisfaction of the town board or planning board, if empowered by the town board in accordance with standards and specifications approved by the town board, as adequate in respect to the public health, safety and general welfare for the special circumstances of the particular street or highway.” Petitioner was denied a permit because that portion of Walnut Park upon which lot 35 abuts had not been so improved. Here again the statutory test is not whether the street or highway has been dedicated but whether it has been “ suitably improved ”.
The requirement that the road giving access to the proposed structure be ‘ suitably improved ’ ’ before a building permit may be issued became a part of the Town Law in 1938 (L. 1938, ch. 264), some six years before petitioner purchased lot 35. This provision is constitutional, and the refusal to issue a permit based upon this subdivision has been sustained even though the lot was upon a street or highway which would otherwise qualify for a permit under subdivision 1. (Matter of Brous v. Smith, 304 N. Y. 164.) The building inspector properly refused to issue the permit in question.
Proceeding is dismissed.